**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jesus RAMIREZ, Jr.,
Defendant-Appellant.**

**No. 81–2109
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

May 12, 1982.

Ramon Garcia, Edinburg, Tex., Gerald Birnberg, Jerry D. Patchen, Houston, Tex., for defendant-appellant.

John M. Potter, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

## ON PETITION FOR REHEARING

Before RUBIN, SAM D. JOHNSON and GARWOOD, Circuit Judges.

PER CURIAM:

Convicted in 1980 of filing a false income tax return in violation of 26 U.S.C. § 7201, Jesus Ramirez, Jr., appeals a probation revocation. Pursuant to a plea bargain arrangement, he had been given a five-year suspended sentence and a $10,000 fine. The special conditions of his probation were (1) good behavior, (2) payment of the $10,000 fine within forty-five days, and (3) payment of all back taxes, interest, and penalties as determined by the IRS. In a prior, unpublished opinion, we affirmed the district court's judgment revoking Ramirez's probation and imposing a five year sentence. 668 F.2d 533 (5th Cir.). Our previous opinion is now withdrawn and this opinion is substituted.

On October 23, 1980, the probation officer filed a revocation petition charging Ramirez with failing to pay the fine as directed. The petition also cited Ramirez's failure to report to the probation officer that he had been issued a speeding ticket by a state highway patrolman on August 14. At the conclusion of a revocation hearing on February 18 and 19, 1981, the district court ruled that the defendant had violated the probationary conditions. He later sentenced Ramirez to imprisonment for a term of five years.

The most serious ground for probation revocation was Ramirez's failure to pay the $10,000 fine by August 16, 1980. As the district court noted, this failure violated not only the terms of probation, but also the terms of Ramirez's plea bargain agreement. Ramirez, however, contends that he gave $5000 of the money to his attorney and assumed that an additional $5000 held by the district court as an appearance bond would cover the fine. Ramirez's attorney, Ramon Garcia, explained at the probation hearing that he had represented both Jesus and his codefendant brother, Armando, each of whom was fined and placed under probationary sentence at the same time. At the time of the sentencing, Armando gave Garcia $10,000 to be applied to the fine.[1] Garcia stated, however, "I kept those $10,000 because I was awaiting to find out whether they wanted me to apply 10,000 as to one or to split them up, $5,000 as to each of them. During the interim I just forgot about it and they assumed that I had paid $10,000 on their fine. Now, they then wanted me to apply $5,000 as to each one, which I did when I learned of my error sometime around October. I think it was September or October."

Meanwhile, on August 21, 1980, the district court disbursed Jesus Ramirez's $5000 appearance bond to attorney Garcia. Ramirez testified that he believed this money was to be applied to his fine, but that Garcia, without informing him, kept the $5000 bond money to satisfy Ramirez's attorney fees. On the other hand, Garcia applied the refund of Armando's appearance bond to pay a portion of Armando's fine. Armando's fine was thus paid in full

---

1. Although Armando Ramirez also paid his fine late, the district court did not revoke his probation. The district court noted that Armando was more diligent in his payment than Jesus.

on October 31. Because Garcia kept the $5000 refunded from Jesus' appearance bond to apply to his fee, Jesus' fine was still not paid at that time.

On November 5 or 6, 1980, after the revocation petition was filed and Jesus learned that his fine had not been paid, he gave Garcia $2500 to deposit with the court. Jesus delivered an additional $2500 to Garcia in early December, and Garcia paid the remaining $5000 thus assembled to the clerk's office on December 17, 1980, four months after payment was due.

The second ground for the probation revocation was failure to advise the probation officer of a traffic offense. On August 14, 1980, Ramirez was cited for driving sixty-two miles per hour in a thirty-mile zone. He was fined $18.50 and paid the fine. When Ramirez met with his probation officer on August 20, he did not mention this incident, even though the general conditions of probation, spelled out on the back of the judgment and probation order of July 2, 1980, stated that Ramirez should get in touch immediately with his probation officer if arrested or questioned by a law enforcement officer. When the probation officer confronted him with the traffic citation, however, Ramirez admitted the offense.

## I. *Allegation of Counsel's Conflict Of Interest in Connection With Probation Revocation.*

■ To secure a reversal of a revocation order, a probationer must present clear evidence that the district court abused its discretion by ordering the revocation. *United States v. Brown,* 656 F.2d 1204, 1207 (5th Cir. 1981); *United States v. Feinberg,* 631 F.2d 388, 391 (5th Cir. 1980). " '[T]he evidence and facts [need only] reasonably. satisfy the judge that the conduct of the probationer has not been as good as required by the conditions or [*sic*] probation.' " *Id.* at 391 (quoting *United States v. Langley,* 438 F.2d 91, 92 (5th Cir. 1970)). Represented now by new counsel, Jesus Ramirez asserts that the district court erroneously concluded that the late payment of his

fine was willful because he thought that his lawyer, Garcia, who had the funds to pay the fine, would do so and he did not know of Garcia's failure to satisfy his obligation. He contends that Garcia had a conflict of interest and neither paid the sums in his hands properly to the court nor reported all of the facts to Jesus as his client nor revealed all of the relevant facts to the court after the revocation petition was filed.

At the probation revocation hearing, the district judge gave several reasons for revoking Jesus' probation based on his finding that Jesus' failure to pay was willful. It was inconceivable to the district judge that a man like Jesus Ramirez who had employees and was operating four trucks was unable to pay the fine sooner, especially in the light of his failure to document his earnings. Furthermore, the judge commented that Jesus made no effort to borrow the money, even though he was making monthly payments of $450 on a 1980 Cadillac. In addition, the judge noted that the timely payment of the fine was not only part of the terms of the probation, but was also an essential part of the original plea bargain agreement.

■ Whether the fine was willfully paid late depends on a full exploration of the retainer between Jesus and Garcia and the handling by Garcia of his client's money. The record suggests at least the possibility that Garcia placed his own interests above his client's, handled his client's funds in an inappropriate manner, and failed fully to communicate essential information to his client. Having received $10,000 from one of his clients, and knowing that two fines were due, he apparently did not bother to inquire until at least a month later how the $10,000 was to be apportioned among the two fines. If Garcia did indeed misapply the funds from the refund of the appearance bond and appropriated them for his fee instead of applying them to the fine, or did not inquire earlier about what he was supposed to do with the $10,000 given to him by Armando in July, then Jesus' failure

to pay the fine earlier might not be considered willful.[2]

The issue of counsel's conflict of interest was not raised below because Garcia was still representing both Ramirez brothers. What the testimony developed by counsel loyal only to Ramirez would have shown we do not know. In *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), the Supreme Court considered the propriety of a probation revocation decision in a Georgia state court. The record indicated a possible conflict of interest between the defendants and the loyalties of their counsel. The Court ordered that the case be returned to the state court for a "hearing to determine whether the conflict of interest that this record strongly suggests actually existed at the time of the probation revocation or earlier." *Id.* at 272, 101 S.Ct. at 1104, 67 L.Ed.2d at 230.

In neither *Wood* nor *Ramirez* was the conflict of interest issue raised in the lower court. In *Wood*, the petition for certiorari did not even identify the issue. In the opinion by Justice Powell, the Court held that the issue should nonetheless be considered because "[w]here, as here, a possible due process violation is apparent on the particular facts of a case, we are empowered to consider the due process issue." *Id.* at 265, 101 S.Ct. at 1100, 67 L.Ed.2d at 226. The opinion also noted:

> The party who argued the appeal and prepared the petition for certiorari was the lawyer on whom the conflict-of-interest charge focused. It is unlikely that he would concede that he had continued improperly to act as counsel.

> \*    \*    \*    \*    \*    \*

Even if one considers that the conflict-of-interest question was not technically raised below, there is ample support for a remand required in the interests of justice. See 28 U.S.C. § 2106. *Id.* at 265 n.5, 101 S.Ct. at 1100 n.5, 67 L.Ed.2d at 226.[3]

*Ramirez* cannot be distinguished from *Wood* on the basis that *Wood* arose on certiorari from a state court and thus was governed by 28 U.S.C. § 1257(3).[4] The majority in *Wood*, 450 U.S. at 265 n.5., 101 S.Ct. at 1100 n.5, 67 L.Ed.2d at 226 n.5, specifically rejected Justice White's suggestion, in dissent, *id.* at 276–278, 101 S.Ct. at 1106–07, 67 L.Ed.2d at 233–234, that § 1257(3) precluded a discussion of a possible conflict of interest when that issue had not been raised below. The majority also noted that *Wood* was concerned only with the question of petitioners' probation revocation, but that habeas corpus relief to vacate the petitioners' sentences would be available if an "actual conflict of interest during the trial or at the time of sentencing" was established. 450 U.S. at 274 n.21, 101 S.Ct. at 1104 n.21, 67 L.Ed.2d at 231 n.21.

Until the facts are clarified, we cannot determine whether the district court acted within its discretion in revoking probation. The district court judge emphasized that Jesus' failure to pay the fine on time was willful. The record indicates that Garcia notified his client of the need for an additional $5,000 in late October 1980, and that Jesus Ramirez delivered $2500 of that balance to his attorney within one week thereafter. He delivered the remaining $2500 approximately thirty days later at the beginning of December. It was apparently Garcia's dilatoriness that resulted in the belated delivery of this $5,000 to the Court on December 17, 1980.

---

**2.** The district court judge did not think that Armando's payment on October 31 was late enough, under the circumstances, to justify probation revocation.

**3.** 28 U.S.C. § 2106, provides, in relevant part: "The Supreme Court or any other court of appellate jurisdiction may ... require such further proceedings to be had as may be just under the circumstances."

**4.** 28 U.S.C. § 1257(3) provides that the Supreme Court may review a state court judgment on certiorari "where any title, right, privilege or immunity is specially set up or claimed under the Constitution, treaties or statutes of ... the United States."

## II. *Other Issues.*

Because we remand this case for a hearing at which Ramirez will be represented by new counsel, we need not review the issue of ineffectiveness of Garcia as counsel in the prior proceeding nor the claim that the district court abused its discretion by imposing such differing sentences on the two brothers. The facts presented to the district court may warrant the difference in treatment, but, in view of the discretion given the trial judge, we should not anticipate the question at this time.

For these reasons, we reverse the revocation of probation and remand for an evidentiary hearing.

REVERSED and REMANDED.