**UNITED STATES of America,
Plaintiff-Appellee,**
v.
**John Franklin MILLER, Sr.,
Defendant-Appellant.**

**No. 85–6036.**

United States Court of Appeals,
Sixth Circuit.

Argued May 6, 1986.

Decided Aug. 1, 1986.

Thomas A. Yoder argued, Toledo, Ohio, for defendant-appellant.

John W. Gill, U.S. Atty., John C. Cook argued, Chattanooga, Tenn., for plaintiff-appellee.

Before ENGEL and RYAN, Circuit Judges, and CONTIE, Senior Circuit Judge.*

CONTIE, Senior Circuit Judge.

This is a criminal case involving an appeal from the district court's order refusing to grant defendant John Miller's motion to dismiss on double jeopardy grounds.[1] The defendant-appellant argues that a district court's determination not to revoke an individual's probation based on alleged criminal activities bars the government from prosecuting that individual based on the same activities. We disagree, and for the reasons which follow, we affirm the district court's denial of the appellant's motion to dismiss.

I.

The defendant-appellant John Miller was placed on probation by the District Court for the Northern District of Illinois in 1980. In 1984, the government sought to revoke Miller's probation based on Miller's alleged illegal involvement with operating M–80 explosive factories. A hearing was conducted on December 18, 1984 by the same district judge which placed Miller on probation in 1980. The district court did not revoke Miller's probation based on the government's allegations and proof.

Subsequently, on August 27, 1985, the government filed an indictment in the Dis-

---

* The Honorable Leroy J. Contie became Senior Circuit Judge July 1, 1986.

1. Orders denying motions to dismiss on double jeopardy grounds are immediately appealable. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *United States v. Sinito,* 723 F.2d 1250, 1252 n. 1 (6th Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984); *United States v. Jabara,* 644 F.2d 574, 576 (6th Cir.1981); *Gully v. Kunzman,* 592 F.2d 283, 286–87 (6th Cir.); *cert. denied,* 442 U.S. 924, 99 S.Ct. 2850, 61 L.Ed.2d 292 (1979).

trict Court for the Eastern District of Tennessee against Miller and nineteen other individuals concerning illegal activities relating to explosives.[2] Miller filed a motion to dismiss the indictment arguing that the Double Jeopardy Clause of the Fifth Amendment and the doctrine of collateral estoppel prevented the government from bringing these charges since the government had failed in its attempt to revoke his probation based on these charges. The district court denied Miller's motion to dismiss, concluding that a probation revocation hearing is not a stage in a criminal prosecution to which the Double Jeopardy Clause attaches, and reasoned that such hearings are administrative in nature and are not conducted to determine the defendant's guilt or innocence. The court further held that the doctrine of collateral estoppel was not applicable since probation revocation hearings do not result in final judgments. This appeal followed.

## II.

The Double Jeopardy Clause states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. This clause requires a determination of two separate questions: What constitutes the "same offense;" and, when is an individual "put in jeopardy?" The defendant-appellant asserts that the charges in the indictment are identical, or the "same offense," as those raised in the probation revocation hearing; the government, on the other hand, asserts that the testimony at the probation revocation hearing focused on criminal activity which occurred in a different state than the activity charged in the indictment. Due to our conclusion that

Miller was not twice "put in jeopardy," resolving this dispute is not necessary.[3]

It is well settled that the Double Jeopardy Clause protects defendants "in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1078, 47 L.Ed.2d 267 (1976). *See also United States v. Sinito*, 723 F.2d 1250, 1255 (6th Cir.1983), *cert. denied*, — U.S. —, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984); *United States v. Lansdown*, 460 F.2d 164, 171 (4th Cir.1972) ("[t]he double jeopardy 'prohibition is not against being twice punished, but against being twice put in jeopardy.'") (quoting *United States v. Ball*, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896)). The following oft-quoted portion of *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) highlights one of the major concerns against which the Double Jeopardy Clause was designed to protect:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make *repeated attempts to convict* an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Id.* at 187–88, 78 S.Ct. at 223 (emphasis supplied).

The appellant asserts that his probation was not revoked because the district court in his revocation hearing held that there was no probable cause to believe he had

---

**2.** The eighteen-count indictment alleged that the defendants had conspired to engage in manufacturing and dealing in explosive materials without a license in violation of 18 U.S.C. § 842(a)(1), and to transport explosive materials in interstate commerce in violation of 18 U.S.C. § 842(a)(3)(A).

**3.** In fact, we have insufficient information to be able to make such a determination because the

decision of the district court which declined to revoke probation is not included in the record. There is no need to remand this case for supplementation of the record, however, since our decision hinges on the nature of a probation revocation hearing rather than the nature of the criminal activity or the court's reasons for refusing to revoke probation.

committed the offenses.[4] Since the government allegedly failed to establish that there was probable cause to believe Miller was involved in the alleged activities, the defendant asserts that the government should be barred from prosecuting him, particularly in another jurisdiction and before another tribunal; that he should not be required to undergo the "embarrassment, expense and ordeal" of defending against these charges a second time while the government utilizes its resources and power to improve its trial strategy against him.

One cannot focus solely on the number of proceedings, however, without focusing on the nature, purpose and effect of the proceedings. It is settled, for instance, that a defendant is not placed twice in jeopardy when he is required to defend himself in a second prosecution after he successfully overturned a previous conviction because of trial error, or after a mistrial was properly declared. *See, e.g., Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978) ("[R]eversal for trial error ... does not constitute a decision to the effect that the

government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant.") One exception to this rule is when the conviction is overturned for insufficient evidence; in such a case, the reversal on appeal is deemed to be equivalent to an acquittal. *See, e.g., Bullington v. Missouri,* 451 U.S. 430, 437, 101 S.Ct. 1852, 1857, 68 L.Ed.2d 870 (1981); *Deloney v. Estelle,* 713 F.2d 1080, 1087 (5th Cir.1983).[5] *Cf. Smalis v. Pennsylvania,* —— U.S. ——, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986) (sustaining a demurrer on grounds of insufficient evidence was the equivalent of an acquittal, barring appeal by prosecution). When an individual is acquitted of a crime, the Double Jeopardy Clause bars future prosecution based on the same offense; when an individual is convicted, he cannot be twice convicted and punished for the same crime. The Double Jeopardy Clause promotes finality, therefore, whether the defendant was initially acquitted or convicted. *See Breed v. Jones,* 421 U.S. 519, 533, 95 S.Ct. 1779, 1787, 44 L.Ed.2d 346 (1975); *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct.

---

**4.** Without the district court's decision, we are unable to verify this assertion, and question whether "probable cause" was the standard applied by the court. Under Federal Rule Criminal Procedure 32.1(a)(1), a preliminary hearing must be conducted when a probationer is held in custody to determine "whether there is probable cause to hold the probationer for a revocation hearing." The appellant states, however, that the hearing conducted in Illinois was not a "probable cause" hearing, but was in fact a revocation hearing. Rule 32.1(a)(2) does not specify a standard to be applied by the district court in a revocation hearing, but merely outlines procedures to be followed.

The case law, however, indicates that granting or revoking probation is reserved to the district court's sound discretion. *See, e.g., United States v. Sackinger,* 704 F.2d 29, 32 (2d Cir.1983); *Tiitsman v. Black,* 536 F.2d 678, 681 (6th Cir. 1976); *United States v. Shapiro,* 491 F.2d 335, 336 (6th Cir.1974); *United States v. Taylor,* 449 F.2d 117, 118 (9th Cir.1971). " 'All that is required for the revocation of probation is enough evidence to satisfy the district judge that the conduct of the petitioner has not met the conditions of probation.' " *United States v. Turner,* 741 F.2d 696, 698 (5th Cir.1984) (quoting *United States v. Dozier,* 707 F.2d 862, 865 (5th Cir.

1983)). *See also United States v. Guadarrama,* 742 F.2d 487, 489 (9th Cir.1984); *United States v. Francischine,* 512 F.2d 827, 829 (5th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 284, 46 L.Ed.2d 261 (1975). To reverse a revocation order, the probationer must establish that the district court abused its discretion. *United States v. Ramirez,* 675 F.2d 707 (5th Cir.1982) (per curiam); *Francischine,* 512 F.2d at 829.

Even if the district court believes that the probationer has violated the conditions of probation, there appears to be no mandate that the court revoke probation. The court is free to consider many factors in granting or revoking probation as part of its discretionary powers. *See Banks v. United States,* 614 F.2d 95, 98–99 (6th Cir.1980). Therefore, it is clearly possible that a district court might refuse to revoke probation, or might reinstate probation, despite the court's satisfaction that the probationer had in fact violated the conditions of probation. *See id.* at 99 & n. 10.

**5.** However, if the reversal is based on the weight of the evidence, as opposed to the sufficiency of the evidence, the Double Jeopardy Clause does not bar a retrial since the court did not determine that acquittal was the only proper verdict. *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

547, 554, 27 L.Ed.2d 543 (1971); *United States v. Garner*, 529 F.2d 962, 971 (6th Cir.), *cert. denied*, 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 154 (1976).

Several circuits have indicated that the Double Jeopardy Clause simply does not apply to parole or probation revocation proceedings. *See, e.g., Jonas v. Wainwright*, 779 F.2d 1576, 1577 (11th Cir.1986); *Thompson v. Reivitz*, 746 F.2d 397, 399 (7th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2332, 85 L.Ed.2d 849 (1985); *United States v. Whitney*, 649 F.2d 296, 298 (5th Cir.1981); *Dunn v. California Department of Corrections*, 401 F.2d 340, 342 (9th Cir.1968). Where probation is revoked and the original sentence or harsher sentence is imposed, revocation does not constitute punishment, nor does the revocation qualify as a repeat prosecution. *See, e.g., Whitney*, 649 F.2d at 298 ("parole and probation revocation proceedings are not designed to punish a criminal defendant for violation of a criminal law"). Further, the Supreme Court has held that a probation revocation hearing is not a stage in the criminal prosecution of an individual. *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 781, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973). As a result, a probationer is not constitutionally entitled to the "full panoply of rights" afforded defendants in a criminal trial. *Morrissey*, 408 U.S. at 480, 92 S.Ct. at 2599; *Scarpelli*, 411 U.S. at 781–82, 93 S.Ct. at 1759.[6] *See also United States v. Farmer*, 512 F.2d 160, 162 (6th Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975) (under *Morrissey*, "it is clear that at [probation revocation] hearings the defendant is not endowed with all of the rights which he possessed prior to conviction.").

■ Although the appellant concedes that probation revocation hearings are often characterized as "administrative" in nature, he asserts that a probation revocation

hearing conducted by a federal district judge should be characterized as "judicial" and therefore afforded different weight. He relies on *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), where the Court ruled that the Double Jeopardy Clause was applicable to juvenile delinquency proceedings, barring future prosecution in adult courts for the same offense. In *Breed*, the Court reasoned that although proceedings in juvenile court were considered "civil" in nature, double jeopardy protection nonetheless attached; the juvenile was "twice put to the task of marshaling his resources against those of the State, twice subjected to the 'heavy personal strain' which such an experience represents." *Id.* at 533, 95 S.Ct. at 1787.

We are unpersuaded by the defendant's argument. In *Breed*, the Court also noted that

> [j]eopardy denotes risk. In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution.... At the same time, however, we have held that the risk to which the Clause refers is not present in proceedings that are not "essentially criminal."

421 U.S. at 528, 95 S.Ct. at 1785. Although Miller was "at risk" in the sense that his probation might be revoked, the risk did not rise to the level of being "put in jeopardy" in the constitutional sense because the revocation hearing was not the equivalent of a criminal prosecution; in other words, the hearing was not a proceeding which could result in a conviction. *See Price v. Georgia*, 398 U.S. 323, 329, 90 S.Ct. 1757, 1761, 26 L.Ed.2d 300 (1970).

Although a district court judge is required to preside in federal probation revocation hearings, *see Banks v. United States*, 614 F.2d 95 (6th Cir.1980); Fed.R. Crim.P. 32.1(a)(2), this fact does not transform the revocation hearing into a criminal prosecution. Miller was not officially

---

**6.** In *Morrissey*, the Court held that revoking parole resulted in a loss of conditional liberty and that the liberty interest involved was protected by due process. The Court in *Scarpelli* noted that "[p]robation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty." 411 U.S. at 782, 93 S.Ct. at 1759.

charged with these crimes; nor was the purpose of the hearing to finally determine whether Miller, in fact, had committed these crimes. Rather, the government wished to establish that Miller was a poor probation risk. The hearing was convened to determine whether Miller had violated conditions of his probation and whether his probation should be revoked as a result of such violations. *See United States v. Whitney*, 649 F.2d 296, 298 (5th Cir.1981). Revocation hearings are not governed by the Federal Rules of Evidence, Fed.R.Evid. 1101(d)(3), and it is well known that such hearings are generally informal. We do not agree with the defendant's assertion, therefore, that the proceedings can be equated to a full-blown trial on Miller's guilt or innocence on the criminal activities involved.

Further, the appellant concedes that if his probation had been revoked as a result of these proceedings, the government would not be barred from prosecuting him. Similarly, had the government prosecuted him first, the defendant concedes that the government would not be barred from relying on these charges at a subsequent probation revocation hearing. We agree, as these concessions are in accordance with the case law previously reviewed. It is totally inconsistent to argue, however, that double jeopardy does not attach to a probation revocation hearing if the government "wins," but only attaches if the government "loses." Either the defendant is placed in jeopardy when he appears before a judge at the probation revocation hearing, or he is not. Even though this case comes to us in a different procedural posture, we believe the case law supports but one conclusion: that Miller was not "put in jeopardy" at the probation revocation hearing and that the Double Jeopardy Clause therefore does not bar the present criminal prosecution.

## III.

■ The defendant also contends that the doctrine of collateral estoppel, as embodied in the double jeopardy guarantee, bars the government from prosecuting him, relying on *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In *Ashe*, the Court held that the doctrine of collateral estoppel was essential to the double jeopardy guarantee, and barred relitigation of the issues that were previously litigated in the defendant's former trial.[7] We find the defendant's reliance on this doctrine is misplaced.

First, since we have concluded that double jeopardy protection does not attach at a probation revocation hearing, *Ashe*, which is a double jeopardy case, provides no support for the defendant. *See, e.g., Thompson v. Reivitz*, 746 F.2d 397, 400 (7th Cir. 1984) (rejection of double jeopardy argument disposes of collateral estoppel argument). Under the facts of this case the double jeopardy and collateral estoppel arguments are essentially identical.

Collateral estoppel bars relitigation of issues of fact determined in a prior litigation, where the determination was essential to the judgment. *Ashe*, 397 U.S. at 442, 90 S.Ct. at 1193; *United States v. Hernandez*, 572 F.2d 218, 220 (9th Cir.1978). *See also Albert v. Montgomery*, 732 F.2d 865, 869 (11th Cir.1984) (issue must be determined by a "valid and final judgment"). The decision of a district court in a probation revocation hearing is not a "valid and final judgment" on the probationer's involvement in alleged criminal activities, and the refusal to revoke probation does not collaterally estop a future prosecution on the same crimes.

## IV.

■ In addition to double jeopardy and collateral estoppel arguments, the defendant asserts that since the government

---

**7.** The defendant in *Ashe* was charged with armed robbery of six individuals, but the robberies constituted the same offense. At the initial trial, the defendant was tried on only one of the robberies and was acquitted. The Court concluded that the issue of his identity, which was the major issue in the case, could not be relitigated at a subsequent trial involving the other robberies.

failed to satisfy a "probable cause" standard, it must be barred from hauling the defendant into court where the government must now meet the tougher standard of "beyond a reasonable doubt."

The defendant uses these different standards of proof to distinguish the double jeopardy cases that permit a prosecution and a subsequent revocation of probation, or a criminal prosecution after a probation has successfully been revoked. He suggests that those cases are correct because it is not inconsistent, for instance, to permit the government to attempt to meet a higher standard of proof if the government has satisfied the lower standard of proof. We find this argument to be wholly without merit for two reasons.

First, as previously discussed, we are of the firm belief that the attachment of double jeopardy rights depends on whether the individual is "put in jeopardy" at a particular proceeding, not on whether the government has or has not met a particular standard of proof. The probation revocation cases which have addressed double jeopardy claims do not rely on the lower standard of proof in the probation revocation proceedings in finding the Double Jeopardy Clause inapplicable.

Second, in the absence of double jeopardy implications, we find no compelling reason to prevent the government from prosecuting a probationer on charges for which it failed to obtain probation revocation. In fact, the policy concerns inherent in defendant's argument strongly support this conclusion. The same criminal actions can be relied on for probation revocation and result in a criminal conviction, and "[t]here is no rule requiring courts to consider probation revocation at the same proceeding or time as they make determinations concerning new offenses with which a probationer is charged." *United States v. Redd,* 759 F.2d 699, 701 (9th Cir.1985) (per curiam). The government is not statutorily or constitutionally obligated to put forth all its evidence at a probation revocation hearing, nor will we mandate such a requirement. Similarly, the charges raised at the revocation hearing may be a small part of an ongoing criminal investigation. The government is not required to complete its entire investigation before seeking to revoke an individual's probation, nor would such a requirement be in society's best interest. As the record reveals, the government in this case initiated this probation revocation proceeding before it had completed its investigation of a suspected criminal conspiracy which allegedly consisted of twenty individuals. Even if the government did not satisfy the probable cause standard, this fact does not amount to an acquittal nor an inability to meet a higher standard of proof at a later date.

Accordingly, the order of the district court is **AFFIRMED** and this case is **REMANDED** for trial.