## Commonwealth v. Davis

*Thomas C. Egan III, assistant district attorney,* for the Commonwealth.
*James P. Fox,* for defendant.

NICHOLAS, *P.J.,* June 30, 1992—The defendant filed a motion to dismiss the charges indexed at 5027-91 [violation of the Controlled Substance, Drug Device and Cos-

metic Act, i.e., possession and delivery or possession with intent to deliver a controlled substance, cocaine, on or about August 7, 1991] on grounds of double jeopardy/collateral estoppel. Defendant's motion was predicated on the fact that in a Gagnon II parole violation hearing held before former President Judge William W. Vogel on October 29, 1991, in file 1106-89,[*] based on the instant charges, the court found that the charges had not been made out by a preponderance of the evidence and that defendant was thereby not in violation of the conditions of parole.

## DOUBLE JEOPARDY

We believe that defendant's claim, that requiring him to stand trial now on the underlying criminal charges indexed at 5027-91, would violate the double jeopardy prohibition of the Constitution, is without merit.

Generally, the prohibition against double jeopardy requires an identity of offenses. The courts have been fairly consistent in ruling that the guarantee against double jeopardy will not bar the state from prosecuting a defendant after its failure to establish, at a revocation hearing, that the defendant violated his or her probation or parole based on the same underlying conduct. The courts have gen-

---

* In file 1106-89, the defendant had entered a guilty plea on January 10, 1990, to a charge of possession with intent to deliver cocaine on or about November 27, 1988. On August 20, 1990, former President Judge Vogel sentenced the defendant to imprisonment for not less than 11 1/2 nor more than 23 months, effective August 20, 1990, and also placed him on a three-year consecutive probation.

erally reasoned that the doctrine does not apply since the defendant is not twice placed at risk of punishment for the "same" offense by virtue of the revocation proceeding. The parole revocation hearing is not intended to adjudicate the defendant's guilt or innocence for the subsequently committed offense, but is merely to determine whether the accused's conduct forms the basis for the revocation of his earlier-granted parole. See 2 A.L.R.5th 262.

In *United States v. Felix,* decided by the U.S. Supreme Court on March 25, 1992, 118 L.Ed.2d 25, 112 S.Ct. 1377, the court held that the introduction of evidence of particular misconduct, for purposes of the Double Jeopardy Clause is not the same thing as prosecution for the conduct. The court's previous decision *Grady v. Corbin,* 495 U.S. 508 (1990), was further clarified. The court pointed out that *Grady* itself disclaimed any intention of adopting a "same evidence" test for double jeopardy, holding that the "mere overlap" of proof between two prosecutions does not establish a double jeopardy violation. The parole revocation proceeding, albeit predicated on the new underlying criminal charges, had as its focus whether parole had ceased to be an effective rehabilitative tool. The defendant was never in "jeopardy" with respect to the new criminal charges. If jeopardy had attached by reason of the revocation proceeding, the Commonwealth would be unable to proceed to try the defendant on the underlying charges *irrespective* of the outcome of the revocation proceeding. Quite clearly therefore, the earlier parole violation hearing was in no

way a prosecution for the same offense as the underlying charges. The Double Jeopardy Clause is not violated by requiring the defendant now to stand trial on the underlying criminal charges.

## COLLATERAL ESTOPPEL

A closer question is presented with respect to the principle of collateral estoppel. Collateral estoppel, an aspect of the broader principle of res judicata, means that when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties. The principle of collateral estoppel is embodied in the guarantee against double jeopardy. As noted above, generally, the prohibition against double jeopardy requires an identity of offenses, whereas collateral estoppel does not.

Counsel have not directed the court to any previous Pennsylvania case presenting the issue of collateral estoppel on these facts. In *Commonwealth v. Brown,* 503 Pa. 514, 469 A.2d 1371 (1983), wherein the Commonwealth had itself requested that the revocation of probation hearing be delayed until after the outcome of the new criminal charges, it was held that the defendant's acquittal at trial on the underlying criminal charges precluded the Commonwealth from pursuing the probation violation. While the court found that the principle of collateral estoppel supported its decision, heavy emphasis was placed on the fact that the Commonwealth, having itself elected to defer to the outcome of the trial, should not be given an additional opportunity to relitigate the same issue. It

was so held despite the fact that at the criminal trial, the Commonwealth carried a heavier burden of proof, beyond a reasonable doubt, whereas the burden of proof in a revocation proceeding is by a preponderance of the evidence. In this respect, the defendant's claim in the instant case is, at first blush, appealing. In *Brown,* while the Commonwealth may not have been able to sustain its heavier burden, it is arguable that it might have sustained its lesser, preponderance of the evidence burden. Here, the defendant argues that because the Commonwealth could not even meet its lesser burden, an even more compelling case exists to bar trial on the basis of collateral estoppel. Upon closer scrutiny however, this court is not persuaded that *on these* facts the principle of collateral estoppel should operate to bar prosecution of the underlying charges. We believe *Brown* is distinguishable on its facts. In *Brown,* the Commonwealth had opted to delay the probation violation hearing until after the outcome of the new charges. The defendant's right to a speedy revocation hearing was thus sacrificed. Moreover, at the criminal trial, the Commonwealth had an incentive to fully litigate the issue. The Commonwealth surely was on notice that it had to present all of its evidence in order to convict the defendant of the underlying crime beyond a reasonable doubt. Where the revocation proceeding occurs first, as it did here, the Commonwealth need only establish the violation by a preponderance of the evidence. The Commonwealth might thus opt to present less than all of its available evidence in order to meet its burden. It might reasonably make this decision

in deference to the nature of the proceeding. The law in Pennsylvania is quite clear that revocation proceedings are meant to be informal; the full panoply of constitutional rights are not available and the rules of evidence are somewhat more relaxed. See *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973). As *Kates* pointed out, there is a strong policy in favor of proceeding with violation hearings before trial on new criminal charges. If the principle of collateral estoppel served to preclude the Commonwealth from subsequently prosecuting a criminal defendant after failing to prove a revocation of his parole based upon the same underlying conduct, violation proceedings would be transformed into full-blown trials. Our already burdened court system would be further burdened with no societal benefit. The interest in prompt, informal hearings to determine whether probation or parole should be revoked would be undermined; full duplication of evidence would be assured. Nor is the answer to simply forestall the violation hearing until after the outcome of the criminal trial as was done in *Brown*. As discussed in *Commonwealth v. Kates*, there is a legitimate societal interest in pursuing the violation first. Obviously, society has a compelling interest in having the criminal charges it has brought against the defendant tried. The Commonwealth should be given a fair opportunity now to prove the charges against the defendant beyond a reasonable doubt. The defendant enjoys the full panoply of rights at trial, with no fundamental unfairness to the defendant resulting from a verdict even contrary to the parole revocation decision. The differ-

ences between revocation hearings and criminal trials outweigh whatever adverse effect inconsistent factual determinations would have on the integrity of the judicial system. See *Lucido v. The Superior Court,* 51 Cal.3d 335, 272 Cal. Rptr. 767, 795 P.2d 1223 (1990). The defendant relies on *Commonwealth v. Richard Wallace,* an opinion authored by Judge Brosky of the Superior Court for a three-judge panel filed January 15, 1992, *Commonwealth v. Wallace,* 411 Pa. Super. 576, 602 A.2d 345 (1992). In *Wallace,* the Superior Court panel held that the Commonwealth is barred, by the principle of collateral estoppel, from relitigating the issue of ultimate fact essential to Wallace's previous acquittal, namely whether he was in possession of a firearm on the date in question. We believe *Wallace* to be distinguishable because in that case, at the previous trial, the Commonwealth had a clear incentive to fully litigate the issue of the defendant's guilt on the underlying charge. As previously stated, there is no similar incentive for the Commonwealth to present all of its available evidence in the revocation proceeding.

In *People v. Fagan,* 483 N.Y.S.2d (1984), the Supreme Court of New York, Appellate Division, Fourth Department, held that the doctrine of collateral estoppel did not preclude the state from attempting to prove at trial the same charges which the state failed, on the merits, to prove under a lesser burden of proof at revocation hearing. In reasoning which we fully adopt, Justice Callahan wrote:

"Care must be taken lest the rigid application of collateral estoppel principles to other areas of law runs afoul of countervailing policies which may at times outweigh the otherwise sound reason for the doctrine in preventing repetitive litigation to the greatest extent possible. (citing *People v. Berkowitz*)

"For one thing, in the criminal law, in contrast to civil litigation, society has an overwhelming interest in ensuring not merely that the determination of guilt or innocence be made, but that it be made correctly." 483 N.Y.S.2d at 492.

The Supreme Court of California in *Lucido v. Superior Court*, 51 Cal.3d 335, 272 Cal. Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 1995, *cert. denied*, 114 L.Ed.2d 107, 111 S.Ct. 2021 (1990) [Lucas, C.J.], held that since a revocation proceeding assesses only whether conditions relating to punishment for a prior crime were violated so that probation should be revoked and not conviction for subsequently committed offenses, collateral estoppel does not apply so as to preclude a criminal prosecution for the same conduct. The court observed that, even assuming, arguendo, that the threshold requirements for collateral estoppel were satisfied, the public policy underlying the doctrine of collateral estoppel must be analyzed. Probation revocation hearings and criminal trials serve different public interests, the court reasoned, and different concerns routinely shape the state's pursuit of revocation and conviction. A revocation hearing assesses whether conditions relating to punishment for a prior crime were

violated so that probation should be revoked, while the criminal prosecution seeks conviction for entirely new offenses. The court commented that the People's failure to satisfy the lower burden of proof at a revocation hearing does not necessarily amount to an acquittal or demonstrate an inability of the state to meet the higher criminal standard of proof. Applying collateral estoppel, the court reasoned, would "unduly expand" the function of the revocation hearing and "undermine" the public interest in determining criminal guilt and innocence at criminal trials.

In *State v. Williams,* 131 Ariz. 211, 639 P.2d 1036 (1982), the Arizona court held that a probation revocation hearing was not a forum which resulted in a "judgment." The court pointed out that collateral estoppel attached only to a judgment. More specifically, the court reasoned, the force of the estoppel is the judgment itself and not the mere finding of the court. It was reasoned that the conclusion of a judge at a revocation hearing "does not rise to the respectability of a judgment." To the same effect are *Teague v. State,* 169 Ga.App. 285, 312 S.E.2d 818, *aff'd,* 252 Ga. 534, 314 S.E.2d 910; and *United States v. Miller,* 797 F.2d 336 (6th Cir. 1986).

Finally, defendant relies on an opinion by the District of Columbia Court of Appeals, *United States v. Dixon,* 598 A.2d 724. We simply point out that *Dixon* is factually distinguishable and in any event is not binding precedent. Moreover, on April 27, 1992, the U.S. Supreme Court granted certiorari in the *Dixon* case with respect to the question of whether, under the Double Jeopardy Clause

of the federal Constitution's Fifth Amendment, an accused's conviction or acquittal for criminal contempt prohibits further prosecution of the accused on another charge, where conduct underlying the contempt prosecution allegedly includes, in whole or in part, the same conduct for which the government seeks to try the accused on the other charge. We believe that because the *Dixon* court relied heavily on *Grady v. Corbin*, [a 5-4 decision authored by Justice Brennan], in light of the *United States v. Felix*, in which *Grady v. Corbin* was further clarified and limited, it is probable that *United States v. Dixon* will be reversed or substantially modified.

For all the foregoing reasons, we conclude that requiring the defendant to stand trial on the instant charges will not violate the guarantee against double jeopardy or the principle of collateral estoppel embodied in the guarantee against double jeopardy.


## ORDER


And now, June 30, 1992, after oral argument before the undersigned on May 27, 1992, and careful consideration, for the reasons set forth in the attached memorandum, the defendant's motion is hereby denied.

This case is scheduled for trial before the undersigned on Monday, August 3, 1992, at 10 a.m. in Courtroom "D" of the Montgomery County Court House, Norristown, Pennsylvania.