January 11, 2018

**Supreme Court**

No. 2016-57-C.A.
(P2/14-3481A)

State                                :

v.                                   :

Benjamin D. Minior.                  :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| State | : | |
| v. | : | |
| Benjamin D. Minior. | : | |

Present: Suttell, C.J., Goldberg, Flaherty, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.** Today, we are called upon to embark on the "journey we reserve[d] for another day." *State v. Pacheco*, 161 A.3d 1166, 1177 (R.I. 2017). Less than a year ago in that case, we "deem[ed] it unnecessary to decide whether collateral estoppel is applicable to issues determined in the [Rhode Island] Traffic Tribunal when all of the elements of the doctrine are met." *Id.* With that issue once again before us, we conclude that the time has come to decide it.

Benjamin D. Minior (Minior or defendant) was cited with the civil violation of reasonable and prudent speeds[1] in the Rhode Island Traffic Tribunal (Traffic Tribunal) and charged criminally in Superior Court with the driving-related counts of driving under the influence, serious bodily injury resulting[2] and reckless driving.[3] Before a Superior Court magistrate, defendant sought to dismiss his criminal charges, arguing that the Traffic Tribunal magistrate determined that he was not operating the vehicle and thus the issue could not be relitigated based on collateral estoppel. The Superior Court magistrate granted the motion to

---
[1] General Laws 1956 § 31-14-1.
[2] General Laws 1956 § 31-27-2.6.
[3] Section § 31-27-4.

dismiss and the state appealed. A Superior Court justice reversed the dismissal. On appeal, defendant argues that the trial justice erred in denying his motion to dismiss based on collateral estoppel. The state counters that the present appeal from the denial of a motion to dismiss is not properly before us.

For the reasons set forth herein, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The facts in this case are straightforward and largely undisputed. On February 17, 2014 at 1:24 a.m., the Town of Bristol (the town) police were dispatched to a motor vehicle accident near 85 Broad Common Road. The vehicle—a 2004 Volvo—had veered off the road and severed a telephone pole, then continued until it hit a tree approximately fifteen feet away. A front-seat passenger suffered injuries to his head and legs, while the suspected operator— identified by the passenger as Minior—had a head laceration. Minior was arrested and taken to Rhode Island Hospital on suspicion of driving under the influence, where a blood test revealed a blood-alcohol content of 0.153 mg/dl. That night, Bristol police cited him with the civil violation of reasonable and prudent speeds. He was also issued a summons to appear at an arraignment for a driving under the influence, serious bodily injury resulting charge, to which he entered no plea and was released on bail.

The defendant appeared before the Traffic Tribunal to answer his civil violation on April 28, 2014. There, Bristol Officer Kevin Kitchen, who was dispatched to the accident, testified as to his observations at the scene. After Officer Kitchen concluded his testimony, Bristol Officer Timothy Gallison, who was also dispatched to the scene, testified as well. Officer Gallison recalled that upon approaching the vehicle, he witnessed a male sitting in the driver's seat.

After both officers testified, defendant's attorney moved to dismiss the violation.  The defendant asserted that, based on a lack of evidence as to both the posted speed limit and defendant's operation of the vehicle, the town failed to satisfy the requisite clear and convincing standard.  Significant to Minior's argument before us is the magistrate's admonition to one of the officers that "there was no testimony as to observation of the motor vehicle at the time of the accident, as to who was driving it.  You're indicating and coming to the presumption as to who was operating the vehicle."  In conclusion, the magistrate said "there was no observation of who was operating the vehicle * * *, so the [c]ourt finds that the [t]own has not sustained the violation for reasonable and prudent speed[s]."

On December 5, 2014, the state filed a criminal information charging defendant with two driving-related counts: (1) driving under the influence, serious bodily injury resulting; and (2) reckless driving.  On August 4, 2015, Minior moved pursuant to Rule 9.1 of the Superior Court Rules of Criminal Procedure to dismiss the criminal charges, arguing that the Traffic Tribunal's dismissal collaterally estopped the criminal charges from proceeding.  The motion to dismiss was heard by a Superior Court magistrate on September 14, 2015.  The Superior Court magistrate granted the motion based primarily on a decision he had rendered in a previous case.

Soon after, the state appealed the Superior Court magistrate's decision per G.L. 1956 § 8-2-11.1(d) and a Superior Court justice heard the matter on December 15, 2015.  The justice reversed the Superior Court magistrate's decision, emphasizing the distinction between "what the Traffic Tribunal [magistrate] did and [what he] did not do when he rendered his decision."  Continuing, she noted that "a careful review of the transcript" revealed that the Traffic Tribunal magistrate did not make a specific finding about whether defendant was operating the vehicle at the time of the accident.  Instead, the Traffic Tribunal magistrate "merely found that the [t]own

had not sustained the violation," and did not decide whether defendant was operating the vehicle. "[The Traffic Tribunal magistrate] merely commented on the absence of evidence and found only that the [t]own had not sustained its burden." The justice ultimately determined that collateral estoppel did not apply, reversed the Superior Court magistrate's decision, and reinstated the charges. The defendant appealed the following day, bringing the case before us.

## II

### Standard of Review

"The determination of whether collateral estoppel should be applied presents a question of law[.]" *Kenlin Properties, LLC v. City of East Providence*, 139 A.3d 491, 497 (R.I. 2016) (quoting *Casco Indemnity Co. v. O'Connor*, 755 A.2d 779, 782 (R.I. 2000)). Accordingly, "[w]e conduct a *de novo* review when confronted with a motion to dismiss on collateral[-]estoppel grounds." *Pacheco*, 161 A.3d at 1174.

## III

### Discussion

### A. Interlocutory Appeal

We begin by addressing the state's argument that this appeal is not properly before us because it is interlocutory and thus unreviewable. "It is well settled in this jurisdiction that appeals from interlocutory orders are not permitted unless they fall within certain well-defined exceptions." *Boranian v. Richer*, 983 A.2d 834, 837 (R.I. 2009). "Ordinarily a denial of a motion to dismiss a criminal action is not a final judgment from which an appeal may be taken. However, when the motion to dismiss is based upon double-jeopardy and collateral-estoppel grounds, we allow an immediate appeal." *State v. Wiggs*, 635 A.2d 272, 275 (R.I. 1993), *abrogated on other grounds by State v. Gautier*, 871 A.2d 347 (R.I. 2005); *see also State v.*

*Godette*, 751 A.2d 742, 745 (R.I. 2000). Because the sole issue is whether collateral estoppel bars the state from prosecuting defendant based on a finding that he was not operating the vehicle, we hold that the appeal is properly before us based on the aforementioned exception.[4] *See Wiggs*, 635 A.2d at 275.

## B. Collateral Estoppel

We now turn to defendant's claim that the state is estopped from prosecuting him based on the Traffic Tribunal's resolution of his civil violation. At the outset, we pause to recall that in *Pacheco*, 161 A.3d at 1176, we distinguished a Traffic Tribunal proceeding from a criminal trial. There, a defendant sought to dismiss a criminal charge of chemical refusal second offense based on collateral estoppel after the Traffic Tribunal had dismissed his civil violation for refusing to submit to a preliminary breath test. *Id.* at 1169-70. We held that there was not an identity of issues as required for collateral estoppel, and the Traffic Tribunal's dismissal therefore did not prevent the state from prosecuting the criminal charge. *Id.* at 1175. In dicta, we also addressed the state's argument that collateral estoppel should not apply to Traffic Tribunal decisions; specifically, we remarked that the standard of prosecution, the discovery mechanisms, and right-to-counsel guarantees differ in the Traffic Tribunal as compared to criminal trials. *Id.* at 1176, 1177. Nevertheless, we ultimately reserved decision on whether collateral estoppel should apply to such proceedings. *Id.* at 1177.

The *Pacheco* majority was met by a dissent, which declared that "[a]lthough what transpires in the Traffic Tribunal is in some respects less formal than what usually occurs in the

---

[4] The defendant argues that the state's appeal of the Superior Court magistrate's order was improper because it should have been appealed not to the Superior Court, but instead directly to this Court pursuant to G.L. 1956 § 8-2-39(f). Because defendant failed to raise this argument below, we do not address its merits and instead consider it waived. *See State v. Barros*, 148 A.3d 168, 172 (R.I. 2016).

Superior Court, it is, nonetheless, a legislatively created court of competent jurisdiction. * * * The hearings are recorded and presided over by a full-time magistrate, and the decisions are binding upon the parties." *Pacheco*, 161 A.3d at 1182 (Flaherty, J., dissenting). With that context in mind, we begin our analysis.

"The doctrine of collateral estoppel provides that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Pacheco*, 161 A.3d at 1172 (quoting *Gautier*, 871 A.2d at 358). Collateral estoppel applies where there exists "(1) an identity of issues, (2) the previous proceeding must have resulted in a *final judgment on the merits*, and (3) the party against whom collateral estoppel is asserted must be the same or in privity with a party in the previous proceeding." *Id.* (quoting *Gautier*, 871 A.2d at 358). Since we deem the time ripe for a determination of the issue left hanging in *Pacheco*, we will assume without deciding that the necessary elements for collateral estoppel exist.[5]

### 1. Inequitable Results

With these collateral estoppel factors assumed, we address an overarching principle that loosens our fixed analysis in the interest of equity. We remember that "we will not apply the doctrine mechanically in situations in which it would lead to inequitable results." *Pacheco*, 161 A.3d at 1172 (quoting *Gautier*, 871 A.2d at 358). "The United States Supreme Court has noted that 'collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.' * * * 'The inquiry

---

[5] The Superior Court justice, emphasizing that the Traffic Tribunal magistrate only determined the issue based on the lack of evidence, found that the Traffic Tribunal magistrate did not make a final judgment on the merits. We decide our opinion on a different basis. *See Sobanski v. Donahue*, 792 A.2d 57, 59 (R.I. 2002) ("[I]n rendering our decisions we are free to decide the case on grounds other than those relied upon by the lower-court judge.").

must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.'" *State v. Hie*, 688 A.2d 283, 284-85 (R.I. 1996) (quoting *Ashe v. Swenson*, 397 U.S. 436, 444 (1970)). "To avoid unfairness, courts have declined to apply collateral estoppel" where its application would be inequitable. *Casco Indemnity Co.*, 755 A.2d at 782; *see also Foster-Glocester Regional School Committee v. Board of Review*, 854 A.2d 1008, 1017 (R.I. 2004).

We have had occasion to apply this principle before. In *Gautier*, we held that collateral estoppel did not apply to a probation-violation hearing because "further application of the doctrine of collateral estoppel to bar relitigation of a criminal charge, following a determination during a [civil] probation-revocation hearing that is adverse to the state, inequitably overlooks and misconceives the inherent and important differences between those proceedings and criminal trials." *Gautier*, 871 A.2d at 358. One of the referenced differences in that case was the applicable due-process standard, which we articulated as "considerably less * * * than that to which they are constitutionally entitled in a full-blown criminal trial" "[d]ue to the less formal nature of such proceedings." *Id.* at 359. We also noted the differing evidentiary rules, where the rules are applied "less stringently" in a probation-revocation hearing. *Id.* Moreover, "[b]ecause the state need not prove a probation violation beyond a reasonable doubt, but only by reasonably satisfactory evidence, * * * probation-violation hearings are frequently held without the benefit of preparation that precedes a criminal trial, * * * and thus are properly conducted in a more informal manner than a trial * * *." *Id.* Ultimately, we determined that "it is neither the purpose nor the intended function of probation-revocation hearings to 'serve as a final arbiter of an individual's guilt or innocence of criminal charges'" and it would therefore be inequitable to estop the state from pursuing a criminal charge based on an unfavorable probation-revocation

decision. *Id.* at 360 (quoting *Commonwealth v. Cosgrove*, 629 A.2d 1007, 1011 (Pa. Super. Ct. 1993)).

We perceive several similarities between *Gautier* and this case. As we prophetically delineated in *Pacheco*, 161 A.3d at 1176, there are numerous differences between a Traffic Tribunal proceeding and a criminal trial. For instance, those appearing before the Traffic Tribunal are not guaranteed the right to counsel. *Id.* Neither are they afforded the same latitude in conducting discovery. *Id.* Though the distinctions are plentiful, perhaps the most persuasive is the overall formality of a Traffic Tribunal proceeding versus a criminal trial. Like probation-violation hearings, which are "more informal * * * than a trial" because of the lower standard required to prove a violation, Traffic Tribunal proceedings are similarly informal where the burden of proof on the prosecution is one of "clear and convincing evidence." *Gautier*, 871 A.2d at 359; Rule 17(a) of the Traffic Tribunal Rules of Procedure. The defendant argues that our holding in *Gautier* rested on reasoning that a probation-revocation hearing is less formal than a trial on the merits, whereas a Traffic Tribunal proceeding is formal. We respond that in *Gautier*, 871 A.2d at 359, we focused not on a superficial distinction between trials and probation-revocation hearings, but instead remained "[m]indful of the critical differences in both the purposes of and procedures employed during probation-revocation hearings and criminal trials." With an eye to such "critical differences" between criminal trials and Traffic Tribunal proceedings, our reasoning today is in accordance with *Gautier*. *Id.*

Moreover, the following resonates:

> "'[T]he government is not statutorily or constitutionally obligated to put forth all its evidence at a probation[-]revocation hearing * * *.' However, application of collateral estoppel to probation-revocation hearings inevitably thwarts this principle of criminal jurisprudence by forcing the state to expedite discovery and present any and all of its evidence and witnesses well in advance of

- 8 -

> trial.  This is especially problematic when, as in some complicated cases, the charges raised at a revocation hearing are *only a small part of a larger, ongoing criminal investigation*."  *Gautier*, 871 A.2d at 360 (quoting *United States v. Miller*, 797 F.2d 336, 342 (6th Cir. 1986)) (emphasis added).

We believe that the same can be said of the Traffic Tribunal.  The present case is an example of a traffic violation that is "only a small part of a larger, ongoing criminal investigation."  *Id.*  To require the state to "complete its entire investigation" before resolving the violation "can effectively hinder its ability to carefully strategize the prosecution of criminal suspects and, consequently, provide for public safety."  *Id.*  Estopping the state from pursuing criminal charges against defendant, or anyone accused similarly, based on the resolve of a non-criminal traffic citation would compromise public safety and undeniably be an inequity to the community.  *See id.*

In *Pacheco*, 161 A.3d at 1176-77, we also acknowledged that various jurisdictions have decided the issue as we do today.  For example, in *State v. Walker*, 768 P.2d 668 (Ariz. Ct. App. 1989), the Court of Appeals in Arizona recognized that "[c]ollateral estoppel effect is generally denied to traffic convictions and minor offenses under accepted common law principles * * *[,] [therefore,] because of the relative insignificance of the charges, [the] defendants have no constitutional right to a jury trial in traffic cases, as they would in a true criminal prosecution, and cannot reasonably be expected to defend with the same vigor."  *Id.* at 671; *cf. Briggeman v. Albert*, 586 A.2d 15, 18 (Md. 1991) (considering whether to admit a traffic violation in a subsequent criminal proceeding, noting that "it is common experience that people plead guilty to traffic charges for reasons of expediency even though they may believe themselves innocent").

In the Traffic Tribunal, there is a lesser level of formality with which cases are both tried and defended, which is one reason of many convincing us that applying collateral estoppel to the

present situation would be inequitable. *See Walker*, 768 P.2d at 672-73 (holding that collateral estoppel is not available to a criminal defendant for a judgment of acquittal following a civil traffic hearing). We are careful to stress, however, that we are not "attempt[ing] to discredit the validity of the Traffic Tribunal judgment," *Pacheco*, 161 A.3d at 1182 (Flaherty, J., dissenting), and rather only say that in matters that are "only a small part of a larger, ongoing criminal investigation," the Traffic Tribunal's process is insufficient to estop a later criminal proceeding. *Gautier*, 871 A.2d at 360.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to that tribunal.

Justice Robinson did not participate.

**Justice Flaherty, dissenting.** I respectfully dissent from the holding of the majority in this case. Although the majority avoids the issue of whether the elements of collateral estoppel were met, for the reasons I previously set forth in dissent in *State v. Pacheco*, 161 A.3d 1166, 1177 (R.I. 2017) (Flaherty, J., dissenting), reasons that I incorporate in this dissent, I am firmly of the opinion that those elements were satisfied in this case and that, as a result, collateral estoppel applies.[1] Moreover, I respectfully disagree with the majority's conclusion that applying

---

[1] Although not a live issue in *State v. Pacheco*, 161 A.3d 1166 (R.I. 2017), I am of the opinion that privity—the third element of collateral estoppel—has been established in this case. In my view, there was a sufficient mutuality of interest between the town of Bristol and the state when the town prosecuted defendant for exceeding reasonable and prudent speeds, a violation of a state statute, G.L. 1956 § 31-14-1. *See Duffy v. Milder*, 896 A.2d 27, 36 (R.I. 2006) ("Parties are

- 10 -

collateral estoppel to the facts of this case would be inequitable.  In my opinion, the balance of equities tilts decidedly in the defendant's favor.  Where, as here, collateral estoppel is tinged by double jeopardy, equity demands its application.[2]

In this case, after hearing testimony from two Bristol police officers, a magistrate of the Traffic Tribunal dismissed the charge of exceeding reasonable and prudent speeds that had been brought against defendant.  In doing so, the magistrate found as a fact that there was insufficient evidence to prove that defendant had been driving.  In my view, it is significant that the state had prior notice of the hearing that was to take place on that charge.[3]  It is also significant to me that there was no appeal of the magistrate's finding that there was insufficient evidence that defendant had been operating a motor vehicle—an essential element of both speeding and driving under the influence, serious bodily injury resulting.  I can reach no other conclusion than

in privity when 'there is a commonality of interest between the two entities' and when they 'sufficiently represent' each other's interests." (quoting *Commercial Union Insurance Co. v. Pelchat*, 727 A.2d 676, 680 (R.I. 1999)); *see also* Black's Law Dictionary 1394 (10th ed. 2014) (defining privity as "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property); mutuality of interest").

[2] "It is * * * apparent that the doctrine of collateral estoppel is a subdoctrine of double jeopardy but would apply in both civil and criminal cases.  When a court of competent jurisdiction has decided an issue of ultimate fact, that fact may not be relitigated between the same parties." *State v. Pineda*, 712 A.2d 858, 864 (R.I. 1998) (Weisberger, C.J., dissenting).

[3] The record reveals that the state had notice that defendant had been charged with exceeding reasonable and prudent speeds.  In an exchange at a pretrial hearing with a police detective from Bristol—one of the police officers who later prosecuted defendant for the traffic offense—the hearing magistrate—the Traffic Tribunal's chief magistrate—said: "Detective, this matter involves a reasonable and prudent speed, and there was an accident, and I am under the understanding that there may be a felony attached to it and so the [Attorney General] might be involved."  The detective responded: "That's correct."  Indeed, in addition to that colloquy, the chief magistrate, after hearing of the severity of the accident and confirming that the state planned to charge defendant with a felony, directed that a telephone call be placed to a representative of the Attorney General's office.  The fact that the state had notice of the traffic offense and intended to charge defendant with the more serious offense of driving under the influence, serious bodily injury resulting, further cements my view that collateral estoppel should be applied as a bar against further litigation of the same facts.

that, at that point, a judgment had been rendered that defendant was not driving on the night of February 14, 2014, and that the preclusive effect of collateral estoppel had attached.

According to the majority, even assuming that collateral estoppel applies, the application of the doctrine in this scenario would create an inequitable result. Respectfully, I cannot agree. There may be cases where the application of collateral estoppel to a judgment of the Traffic Tribunal may create an inequitable result, but this is not that case. Indeed, it seems to me to be far more inequitable to require a defendant to defend twice for essentially the same conduct than to apply collateral estoppel to a final judgment of a court of competent jurisdiction. For those reasons, it is my opinion that the state's opportunity to contest whether defendant was operating the motor vehicle had closed. Because "an issue of ultimate fact"—that is, whether defendant was driving—was "determined by a *valid and final judgment*, that issue cannot again be litigated * * *." *State v. Gautier*, 871 A.2d 347, 358 (R.I. 2005) (quoting *State v. Werner*, 865 A.2d 1049, 1055 (R.I. 2005)). The elements of collateral estoppel were satisfied and the doctrine should have been applied. When weighing the equities at issue in this case, it is better, I respectfully conclude, that we apply collateral estoppel than require defendant to defend himself a second time on a charge arising from an identical fact pattern.

For those reasons, I would vacate the judgment of the Superior Court.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Benjamin D. Minior. |
| **Case Number** | No. 2016-57-C.A. (P2/14-3481A) |
| **Date Opinion Filed** | January 11, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice William E. Carnes, Jr. |
| **Attorney(s) on Appeal** | For State:<br><br>Aaron L. Weisman<br>Department of Attorney General<br><br>For Defendant:<br><br>Richard S. Humphrey, Esq.<br>Allyson M. Quay, Esq. |