STATE

v.

**Keith WERNER.**

**No. 96–155–C.A.**

Supreme Court of Rhode Island.

Jan. 12, 2005.

Aaron L. Weisman, Esq., Providence, for Plaintiff.

Paula Rosin, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

FLAHERTY, Justice.

The defendant, Keith Werner, an inmate at Walpole State Prison in the Commonwealth of Massachusetts, appeals to this Court from convictions for crimes committed in Rhode Island, for which he is to serve time upon the completion of his Massachusetts sentence. In December 1993, a jury returned guilty verdicts on two counts of robbery, conspiracy to commit robbery, and carrying a pistol without a license, all stemming from a robbery of the West Warwick Credit Union. After denying Werner's motion for a new trial, the trial justice imposed a sixty-year sentence, consisting of forty years incarceration and twenty years probation, consecutive to the sentence Werner currently is serving at Walpole. His appeal to this Court alleges violations of the Interstate Agreement on Detainers Act (IADA or act), G.L.1956 chapter 13 of title 13, and a claim that the

trial justice committed reversible error when she instructed the jury that an extra-judicial identification made by selecting a defendant's photograph from a group of people is generally more reliable than an identification made after the presentation of a defendant alone. Because we previously have denied the defendant's appeals on these very same issues, we deny this appeal based on the doctrine of collateral estoppel.

### Facts and Procedural History

### I

### Werner's Criminal History

Late in the afternoon of August 30, 1990, bank tellers Michelle Payette and Gary Kowalik were hard at work at West Warwick Credit Union. A man, later identified by both tellers as Keith Werner, entered the building, gun in hand, proclaiming "This is a stick-up. Give me all your money." Werner then approached Payette's window, pointed his gun at her, and demanded that she fill his bag with money. After doing the same to Kowalik, the robber ran out of the building with a bag full of loot.

While exiting the building, Werner bumped into customer David Nobriga. After being alerted to the robbery by the bank manager, Nobriga chased Werner down the street. After Nobriga saw Werner enter a white car, he then returned to the credit union and alerted the police of the car's registration number. Werner's escape was stymied by heavy traffic, and, after locating the car, several West Warwick police officers approached with weapons drawn. Unable to effectuate the occupants' surrender, they disabled the vehicle by shooting out its tires. Soon after, Frank Palermo, the car's driver, surrendered to the police. But Werner, wounded by an errant bullet, steadfastly remained in the vehicle, armed and with his finger on the gun's trigger, until an officer finally forced him out of the car.

Between the time of his arrest and his 1993 conviction for the robbery of the West Warwick Credit Union, Werner managed to commit several crimes in both Massachusetts and Rhode Island. By early 1993 he found himself in prison, convicted of a Massachusetts home invasion. Soon after he was sentenced by a Massachusetts court, the Rhode Island Attorney General commenced efforts pursuant to the IADA to seek Werner's custody in Rhode Island to face a number of charges here, including those resulting from the West Warwick Credit Union robbery. By August 1993, Werner was returned to Rhode Island and, over the course of the following year and a half, he was tried on numerous charges.

At the trial for the credit union robbery in December 1993, Frank Palermo testified to Werner's participation. Werner maintained his innocence, contending that Palermo had committed the robbery, kidnapped Werner at gunpoint, and demanded that he ferry him away from the scene of the crime. After the trial justice denied his motion to dismiss based on the alleged violations of the Interstate Agreement on Detainers Act, Werner was convicted of robbery, conspiracy to rob, and carrying a pistol without a license.

We pause here to state that Keith Werner is by no means a stranger to the criminal justice system. In addition to the sentence Werner began serving in 1993 in Massachusetts for home invasion, and the convictions stemming from the West Warwick Credit Union robbery from which he now appeals, Werner has involved himself in a myriad of criminal activities that make him all too familiar to us. His track record includes convictions for assault with a dangerous weapon, possession of a loaded weapon in a vehicle, and possession of a

sawed-off shotgun, all resulting from an incident outside of Johnny Ray's Bar, a West Warwick drinking establishment, where Werner cavalierly shot two bystanders who attempted to intervene in an altercation in which he was involved.

Werner has been involved in other criminal activities, some of a cruel and heinous nature. Of particular note are Werner's convictions for robbery, larceny of an automobile, and assault with a dangerous weapon arising from an attack on an expectant mother outside a local bank. He not only robbed his unarmed victim at gunpoint, but coolly proceeded to shoot her in the stomach in response to her pleas not to harm her. He then stole her car. Werner has exhibited criminal behavior not only while on the street, but also during his prison stays as well, demonstrated by a conviction for assault with a dangerous weapon after stabbing, slashing, and biting a correctional officer at the Adult Correctional Institutions.

## II

### Werner's Previous Appeals to this Court

After being transferred, pursuant to the IADA, to Rhode Island from a Massachusetts prison in the summer of 1993, Werner faced four separate trials resulting in multiple convictions. He appealed all four convictions to this Court, including the present appeal, alleging various points of reversible error. Werner's first post-conviction appeal, *State v. Werner*, 831 A.2d 183 (R.I.2003) (*Werner I*), stems from the Johnny Ray's incident, and Werner's convictions of assault with a dangerous weap-

on, possession of a sawed-off shotgun, and possession of a loaded weapon in a vehicle. This Court denied Werner's appeal on multiple grounds.

■ Of particular note in *Werner I* were defendant's contentions that the trial justice improperly denied his motion to dismiss based on violations of the IADA, and committed reversible error when he instructed the jury on matters of eyewitness identification. In *Werner I*, we articulated, at great length, the proper methods of applying the IADA, as well as its function and purpose. The IADA is "a compact among a number of participating states * * * designed to expedite the trial of criminal charges pending in one state (the receiving state) while the person is incarcerated in another state (the sending state)." *Werner I*, 831 A.2d at 191. Werner argued to the trial justice, and on appeal to this Court, that Rhode Island violated provisions of the IADA by failing to bring him to trial within the time frames required by the act.

Denying Werner's appeal and affirming the trial justice's denial of Werner's motion to dismiss, this Court concluded that the trial justice was correct in his findings of fact and law as they applied to the IADA. We held that there had been no violation of the IADA, that the writ of habeas corpus issued by a Rhode Island Superior Court justice did not trigger the IADA clock, and that Werner had frustrated his own return to Rhode Island to face charges here for tactical reasons.[1] *Werner I*, 831 A.2d at 194.

On the issue of jury instructions regarding photo arrays, we likewise denied Wer-

---

**1.** Because in *State v. Werner*, 831 A.2d 183 (R.I.2003) (*Werner I*), we provide a thorough and chronological description of the goings-on between the time that Werner was sentenced in Massachusetts and when he was brought to Rhode Island to face trial for vari-

ous charges, and because we apply those facts to the law as articulated in the IADA, we refer the reader to *Werner I*, 831 A.2d at 191–95 for more details on the IADA issue and how we came to our holding that there had been no violations of the act.

ner's appeal. Werner argued that the trial justice's instructions were unfair comments on the evidence, and as such, constituted reversible error.[2] Although we agreed wholeheartedly with Werner that the trial justice must be unscrupulously fair and must neither infringe on the fact-finding province of the jury nor advocate for either the prosecution or the defense, we failed to see the error in the trial justice's instructions.[3] *See id.* at 205. Instead, we held that the charge, taken from a set of model instructions adopted in the federal courts, merely articulated "some general guidelines that would apply to any consideration of eyewitness identification by a jury." *Id.* As such, the instruction was not unfair, did not indicate any opinion on the part of the trial justice, and did not constitute prejudicial error. *Id.*

This Court denied Werner's second appeal within weeks of *Werner I.* In *State v. Werner,* 830 A.2d 1107 (R.I.2003) (*Werner II*), the defendant appealed from his conviction of assault with a dangerous weapon arising out of a prison altercation. On appeal, Werner argued that his charges should have been dismissed for failure to bring the case to trial within the time frame established in the IADA, that the trial justice erred by declining to grant a mistrial based on certain testimony, and that the trial justice committed reversible error when he ruled that evidence of Werner's previous acts of violence would be admissible if Werner asserted self-defense. Although we denied his appeal on all grounds, it is of particular importance that we relied solely on our decision in *Werner I* to refute the defendant's contention that he had been brought to trial in violation of the IADA.[4]

In his next appeal to this Court, Werner *again* asserted that violations of the IADA warranted reversal of his convictions for crimes committed in Rhode Island. In *State v. Werner,* 851 A.2d 1093 (R.I.2004) (*Werner III*), the defendant appealed from his convictions of robbery, assault with a dangerous weapon, and larceny emanating from his attack on the pregnant woman and her mother outside of a local bank.[5] Aside from his IADA-based appeal, Werner appealed, among other issues, the trial justice's refusal to allow expert testimony about eyewitness testimony, and the court's rejection of the defendant's request for a court-funded polygraph test. This Court again denied Werner's appeal on all grounds. On the IADA issue, we emphasized that despite Werner's unrelenting contention that

2. The trial justice instructed to the jury that "*You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to a witness.*" *Werner I,* 831 A.2d at 205.

3. This Court noted our previous criticisms of the model instructions in situations in which cross-racial identification was at issue, and commented that such criticisms do not apply to the facts of Werner's case. *See Werner I,* 831 A.2d at 206.

4. "The defendant argues that the criminal information should have been dismissed because the state failed to bring the case to trial within the time limitations required by the Interstate Agreement on Detainers Act (IADA), G.L.1956 chapter 13 of title 13. The trial justice denied the motion to dismiss on this ground and, in his ruling, incorporated the reasoning of other Superior Court justices who had denied similar defense motions based on this alleged IADA violation.
"For the reasons stated in our opinion * * * we deny defendant's appeal on this ground." *State v. Werner,* 830 A.2d 1107, 1110 (R.I.2003) (*Werner II*).

5. Werner was labeled a habitual offender upon his convictions for the attack on the pregnant woman. *State v. Werner,* 851 A.2d 1093, 1099 (R.I.2004) (*Werner III*).

Rhode Island had failed to transport him here from Massachusetts within the time frame prescribed by the act, and that his subsequent Rhode Island convictions demand reversal, his claims are collaterally estopped.

"Because the issues before us now are identical to those in *Werner I* and *Werner II*, and Werner was a party in all three cases, and final judgment was reached in *Werner I* and *Werner II*, defendant is barred by collateral estoppel from bringing this claim. * * * Therefore, as defendant concedes, our previous holdings are controlling and the trial justice's denial of defendant's request to dismiss under the act is affirmed." *Werner III*, 851 A.2d at 1109–10.

In his present appeal to this Court, Werner argues for a reversal of his 1993 convictions issuing from the West Warwick Credit Union robbery. Werner now appeals on several grounds, including the trial justice's failure to dismiss the case for the state's failure to bring him to trial

within the mandatory time frames specified in the IADA, and the trial justice's allegedly erroneous jury instructions concerning eyewitness identification. For the reasons stated below, we deny and dismiss defendant's appeal.

## Analysis

### I

### Interstate Agreement on Detainers Act

■ Despite our previous holdings, defendant Werner now invites us to reconsider the wisdom of our decisions in *Werner I, Werner II*, and *Werner III*, and hold that the trial court erred in denying his motion to dismiss based on the state's failure to comply with the requirements of the IADA. In this present appeal, Werner contends either (1) that the state failed to bring him to trial within the 180–day time frame of Article III of the IADA; or (2) that the state failed to accept custody of Werner within the timeframe of Article IV of the IADA.[6] However, with respect to

---

**6.** The relevant sections of the IADA provide that:

"Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he or she shall be brought to trial within one hundred eighty (180) days after he or she shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his or her imprisonment and his or her request for a final disposition to be made of the indictment, information or complaint; provided, that, for good cause shown in open court, the prisoner or his or her counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certifi-

cate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the state parole agency relating to the prisoner." Section 13–13–2 Art. III(a).

"The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he or she has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with article V(a) of this agreement upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: provided, that the court having jurisdiction of the indictment, information, or complaint shall have duly approved, recorded, and transmitted the re-

both of these contentions, we simply direct defendant to our opinions in his previous appeals. With respect to Werner's Article III claim, that his March 10, 1993 petition for habeas corpus served to invoke his IADA rights, and consequently triggered the 180-day requirement of Article III, we must refer defendant to our decision in *Werner I*. There, we held specifically that "the writ of habeas corpus issued by another justice of the Superior Court on April 5, 1993, did not constitute an effective detainer (nor did it purport to do so) and did not trigger any obligation either by Massachusetts or Rhode Island to return Mr. Werner to this jurisdiction." *Werner I*, 831 A.2d at 194. Alternately, Werner claims that the trial justice improperly labeled his case an Article III case, and that under its rightful Article IV label, the case must be dismissed for the state's failure to take custody within a reasonable time. But, we already have addressed this argument and point defendant to our decision in *Werner I*, in which we upheld the trial justice's findings of law and fact, including her decision that Rhode Island had sought custody of Werner pursuant to IADA Article III, and not Article IV.

■ Even as he argues these decided points anew, Werner acknowledges that we have already addressed his concerns and decided these very same issues. Under the doctrine of collateral estoppel, " 'when an issue of ultimate fact has once been determined by a *valid and final judgment*, that issue cannot again be litigated between the same parties in any future lawsuit.' " *State v. Santiago*, 847 A.2d 252, 254 (R.I.2004) (quoting *State v.*

*Hie*, 688 A.2d 283, 284 (R.I.1996)). For collateral estoppel to apply and bar a party from relitigating an issue, there must be "(1) an identity of issues, (2) the previous proceeding must have resulted in a *final judgment on the merits*, and (3) the party against whom collateral estoppel is asserted must be the same or in privity with a party in the previous proceeding." *Id.* Courts apply the doctrine while allowing for exceptions in situations in which application would lead to inequitable results. *See Foster–Glocester Regional School Committee v. Board of Review*, 854 A.2d 1008, 1014 (R.I.2004). In Werner's case, all three elements of collateral estoppel are present to bar the present suit, and we see no reason why application of the doctrine would lead to inequitable results. Therefore, despite defendant's offer, we decline an additional bite at this apple.

## II

### Jury Instructions

■ Werner also invites this Court to revisit our rationale concerning certain jury instructions made during trial. He contends that it was reversible error for the trial justice to instruct the jury, in regard to identification testimony, that "[y]ou may also take into account that an identification was made by picking the defendant out of a group of individuals, which is generally more reliable than a one-on-one confrontation." However, defendant again acknowledges that this Court earlier rejected identical contentions regarding jury instructions. In *Werner I*, the defendant maintained there was reversible error in a similarly worded instruction by a dif-

quest and provided further, that there shall be a period of thirty (30) days after receipt by the appropriate authorities before the request is honored, within which period the governor of the sending state may disap-

prove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner." Section 13–13–2 Art. IV(a).

ferent trial justice. *See Werner I,* 831 A.2d at 205.[7] There, we rejected Werner's contention that the instruction in any way constituted prejudice on the part of the trial justice, and held that the model instructions did not violate any maxims of judicial fairness and impartiality. *Id.* at 206.

Courts are required, though with occasional exception, to give deference to their own earlier judicial opinions. *See Johnston Ambulatory Surgical Associates, Ltd. v. Nolan,* 755 A.2d 799, 807 (R.I.2000). Under the doctrine of *stare decisis,* "courts should adopt the reasoning of earlier judicial decisions if the same points arise again in litigation." *Id.* In yet another case involving the oft-litigated criminal career of Keith Werner, we did, however, articulate that "[a]lthough *stare decisis* serves a profoundly important purpose in our legal system, this court believes that overruling precedent is justified if the motivating purpose is to eliminate inconsistency and anomalous results." *State v. Werner,* 615 A.2d 1010 (R.I.1992)[8] (reversing a Superior Court decision granting Werner's pretrial motion to suppress evidence seized from an automobile without a warrant after the Johnny Ray's Bar incident). Such justification is not present in this case. Therefore, we refuse to deviate from our earlier reasoning, and as with the IADA issue, hold that Werner is barred from raising this issue by the doctrine of collateral estoppel. Consequently, we deny Werner's appeal on the jury instructions issue.

---

7. *See also* supra n. 2.

8. Despite Werner's previous appeals to this Court in *State v. Werner,* 615 A.2d 1010 (R.I. 1992), and *State v. Werner,* 667 A.2d 770 (R.I. 1995), we designated the three appeals pertinent to the facts at issue here as *State v. Werner,* 831 A.2d 183 (R.I.2003) (*Werner I*),

## III

## Sundry Matters Raised in Defendant's Supplemental *Pro Se* Brief

Additionally, Werner has submitted to this Court a supplemental *pro se* brief raising an assortment of issues not argued by the public defender. We have carefully examined the defendant's arguments to support the issues he raises and see utterly no merit in his contentions.

### Conclusion

For the foregoing reasons, the defendant's appeal is denied and dismissed. We affirm the judgment of the Superior Court, to which we remand the papers in this case.

Justice GOLDBERG did not participate.

*State v. Werner,* 830 A.2d 1107 (R.I.2003) (*Werner II*), and *State v. Werner,* 851 A.2d 1093 (R.I.2004) (*Werner III*). *See Werner III,* 851 A.2d at 1109 n. 5. For future reference, the instant appeal shall be considered *Werner IV.*