June 16, 2017

**Supreme Court**

No. 2014-229-C.A.
(P2/12-1403A)

|            |   |
|------------|---|
| State      | : |
| v.         | : |
| Francisco Pacheco. | : |

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|            |   |
|------------|---|
| State      | : |
| v.         | : |
| Francisco Pacheco. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on March 9, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  In 2014, the defendant, Francisco Pacheco (Pacheco or defendant), was before this Court on appeal from a judgment of conviction in the Superior Court; the basis of this appeal was that the doctrine of collateral estoppel should have barred the state from prosecuting a chemical breath test refusal under G.L. 1956 § 31-27-2.1. After the initial oral argument, on November 10, 2015, the case was remanded to the Superior Court for an evidentiary hearing on whether that issue was timely raised in Superior Court.  On July 21, 2016, the Superior Court trial justice found that good cause had been shown for the delay.  By order of this Court, the parties were permitted to file supplemental memoranda on the substantive issue of collateral estoppel.  After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument.  We affirm the judgment of the Superior Court.

- 1 -

**Facts and Travel**

On December 28, 2011, at approximately two o'clock in the morning, after failing to stop at a stop sign, Pacheco's vehicle nearly collided with Warren Patrolman Patrick T. Sarasin's (Officer Sarasin) police cruiser. Officer Sarasin, who was accompanied by Patrolman Christopher Perreault (Officer Perreault), observed Pacheco's vehicle turn onto Child Street in Warren, Rhode Island. When the officers began to follow Pacheco, he abruptly turned around in a parking lot, reversed direction, and sped away. Pacheco then failed to stop at a second stop sign and proceeded into the parking lot of the Portuguese Soccer Club, at which point a foot-chase ensued. Officer Sarasin was able to apprehend Pacheco after he tripped over a curb. Pacheco struggled with the officer.

As Officer Sarasin attempted to restrain Pacheco, he detected a strong odor of alcohol and noted that Pacheco also was exhibiting slurred speech. After Pacheco refused to comply with requests to stop resisting, he was sprayed with oleoresin capsicum spray—commonly referred to as pepper spray—by Officer Perreault. Additional officers arrived, and Pacheco, who continued to resist, was taken into custody. At the scene, Pacheco was asked to take a field sobriety test and a preliminary breath test. He refused to do so.

Pacheco was transported to the Warren Police Department (police department), where he was permitted to use a decontamination sink to wash his face and eyes. He was placed in a "breathalyzer room" and advised of his rights with respect to a request to undergo a chemical breath test.[1] Pacheco was uncooperative; he continuously stood up and attempted to walk away. On each occasion, Pacheco had to be forcefully returned to his seat, and he was ultimately handcuffed. Pacheco refused to take a chemical breath test and likewise refused to sign any

---

[1] This colloquy is known as "Rights For Use at the Station."

related paperwork. The officers later located a small bag of marijuana in a pocket of Pacheco's pants. Pacheco was charged by criminal information with possession of marijuana in violation of G.L. 1956 § 21-28-4.01(c)(2)(ii), second offense; driving under the influence of alcohol in violation of G.L. 1956 § 31-27-2; simple assault in violation of G.L. 1956 § 11-5-3; resisting arrest in violation of G.L. 1956 § 12-7-10; and a second offense of refusing a chemical breath test (chemical refusal) in violation of § 31-27-2.1(b)(2). He was also cited with the following infractions: refusal to submit to a preliminary breath test (preliminary refusal)[2] in violation of § 31-27-2.3; failure to stop at a stop sign; and operating a motor vehicle without evidence of insurance.

On July 15, 2013, Pacheco's traffic infractions were heard in the Rhode Island Traffic Tribunal; Pacheco appeared pro se, and the Town of Warren also was unrepresented by counsel. Officer Sarasin testified[3] that he pulled Pacheco over for failing to stop at a stop sign. He recounted that he pursued Pacheco on foot and apprehended him after a struggle. After being prompted by the magistrate, Officer Sarasin added that Pacheco also was charged with a preliminary refusal. This was the extent of the evidence presented against Pacheco in the Traffic Tribunal. The magistrate dismissed the preliminary refusal infraction, concluding that the appropriate evidentiary foundation had not been established.

In the Superior Court, on the eve of trial, Pacheco sought to dismiss the second offense, chemical refusal charge on the basis of collateral estoppel, arguing that, "[b]ecause the

---

[2] As discussed infra, a chemical refusal and preliminary refusal constitute two separate offenses charged under different statutes. A preliminary breath test commonly occurs at the scene of the traffic stop, whereas a chemical breath test is undertaken at the police station. A preliminary refusal is an infraction; a second-offense chemical refusal is a misdemeanor.

[3] The transcript from the hearing lists an "Officer Patrick Harris" as the testifying officer. However, it appears that this was done in error as the record indicates that the transcription of "Harris" was phonetic.

government failed in its first attempt to prove by clear and convincing evidence that the defendant refused to submit to a chemical test at the time of the alleged incident, it is collaterally estopped from trying [Pacheco] again on the same issue." The defendant asserted that the state failed to establish the requisite reasonable belief necessary to prove the preliminary refusal by failing to present evidence that Officer Sarasin detected the odor of alcohol on defendant, observed bloodshot or watery eyes, or exhibited a staggered walk. The trial justice denied the motion, finding that it was untimely filed and that it lacked merit. The case proceeded to trial,[4] and Pacheco renewed his motion to dismiss at the conclusion of trial, where it was again denied. Pacheco was convicted by a jury of unlawful possession of marijuana and a chemical refusal.[5] On May 29, 2014, he was sentenced to five months to serve on the second offense, chemical refusal count. Pacheco appealed.

On November 10, 2015, the case was remanded to the Superior Court by order of this Court. State v. Pacheco, 128 A.3d 867 (R.I. 2015). We directed the Superior Court to conduct an evidentiary hearing to determine whether defendant's motion to dismiss on grounds of collateral estoppel was timely under Rule 12(b)(2) and Rule 12(b)(3) of the Superior Court Rules of Criminal Procedure.[6] The Superior Court justice concluded that defendant's motion was

---

[4] The DUI charge was severed from the other four charges by order of the Superior Court entered on March 17, 2014.

[5] The jury returned a not guilty verdict on the assault count and was deadlocked on the resisting arrest charge.

[6] Rule 12(b) of the Superior Court Rules of Criminal Procedure states, in pertinent part:

> "(2) The defense of double jeopardy and all other defenses and objections based on defects in the institution of the prosecution or in the indictment, information, or complaint other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial.

untimely filed but that there was good cause for the delay because a new attorney had been assigned to defendant's case after the initial attorney suffered a medical emergency. Accordingly, on October 31, 2016, an order was entered in the Supreme Court assigning the case to the show cause calendar.

Before this Court, defendant argues that the state was collaterally estopped from prosecuting the chemical refusal in the Superior Court because the facts at issue were decided in the Traffic Tribunal. The defendant contends that, although the charges arise out of different statutes, the state nonetheless must prove that the officer reasonably believed that the operator was operating a motor vehicle while under the influence of alcohol or drugs. The state, while conceding at oral argument that there was an identity of parties, contends that the question of Officer Sarasin's reasonable belief that defendant was operating under the influence was not "actually litigated and determined" in the Traffic Tribunal because the charge was dismissed based on a lack of evidentiary foundation. The state also notes that defendant twice refused a breath test, constituting two distinct offenses, and that observations which occurred after the first preliminary refusal, while certainly relevant to the second chemical refusal charge were unrelated to the first charge heard in the Traffic Tribunal. Finally, the state directs our attention to the procedural differences between the Traffic Tribunal and the Superior Court and suggests that collateral estoppel in this context may be the wrong road to travel.

---

"(3) The motion shall be made no later than thirty (30) days after the plea is entered, except that if the defendant has moved pursuant to Rule 9.1 to dismiss, it shall be made within thirty (30) days after entry of an order disposing of that motion; but in any event the Court may permit the motion to be made within a reasonable time after the plea is entered * * *." (Emphasis added.)

- 5 -

## Analysis

The issue before the Court involves two separate statutory enactments governing two discrete offenses allegedly committed by an operator who refuses to submit to a breath test examination. Section 31-27-2.3(a) governs preliminary refusals which are cognizable in the Traffic Tribunal:

> "When a law enforcement officer has reason to believe that a person is driving or in actual physical control of any motor vehicle in this state while under the influence of alcohol, the law enforcement officer may require the person to submit to a preliminary breath analysis for the purpose of determining the person's blood alcohol content. The breath analysis must be administered immediately upon the law enforcement officer's formulation of a reasonable belief that the person is driving or in actual control of a motor vehicle while under the influence of alcohol, or immediately upon the stop of the person, whichever is later in time. Any chemical breath analysis required under this section must be administered with a device and in a manner approved by the director of the department of health for that purpose. The result of a preliminary chemical breath analysis may be used for the purpose of guiding the officer in deciding whether an arrest should be made. When a driver is arrested following a preliminary breath analysis, tests may be taken pursuant to § 31-27-2.1. The results of a preliminary breath test may not be used as evidence in any administrative or court proceeding involving driving while intoxicated or refusing to take a breathalyzer test, except as evidence of probable cause in making the initial arrest."

The preliminary breath test must be administered immediately after the officer forms his or her reasonable belief or immediately after the officer stops the individual, whichever is later. Section 31-27-2.3(a). A refusal to submit to a preliminary breath test gives rise to a traffic infraction. Section 31-27-2.3(b). Enacting the sections at different times, the Legislature carefully delineated that a preliminary refusal and a chemical refusal remain separate and distinct offenses. When an operator fails a preliminary breath test, this fact may serve as evidence of probable cause for the operator's arrest, but the results are not admissible on the question of

whether the operator was driving while intoxicated.  The results of the preliminary breath test "may not be used as evidence in any administrative or court proceeding involving driving while intoxicated or refusing to take a breathalyzer test, except as evidence of probable cause in making the initial arrest"; however, a chemical breath test may be administered pursuant to § 31-27-2.1 if a driver is arrested after a preliminary breath test analysis.  Section 31-27-2.3(a).  If the operator fails the preliminary breath test, the officer has probable cause to arrest and request a chemical breath test, but the preliminary results—whether the operator passed or failed—are inadmissible in a subsequent trial for the separate offenses of driving under the influence or a breathalyzer refusal.  The state must prove all of the statutory criteria set forth for each of those offenses.  Thus, a preliminary breath test, while an important tool for law enforcement's fight against drunk driving, is of little utility for the prosecution of operating under the influence and chemical breathalyzer refusal.

Chemical breath test refusals are governed by § 31-27-2.1(a), the statute under which defendant was criminally charged.[7]  That provision permits an officer to administer a chemical breath test if he or she has "reasonable grounds to believe [that a] person [has] been driving a motor vehicle within this state under the influence of intoxicating liquor, toluene, or any controlled substance * * *." Id.  The officer is required to inform the person of his or her rights and the consequences of refusing to submit.  Section 31-27-2.1(b).  The defendant argues that dismissal of the preliminary refusal infraction in this case precludes a subsequent prosecution for

[7] Pacheco was charged as a "second violation" offender, rendering the chemical refusal a misdemeanor.  G.L. 1956 § 31-27-2.1(b)(2).  A second conviction of refusal to submit to a chemical breath test results in a criminal charge, for which a defendant faces: "imprison[ment] for not more than six (6) months[,]* * * a fine in the amount of six hundred dollars ($600) to one thousand dollars ($1,000)[,]" and a driver's license suspension "for a period of one year to two (2) years." Id.  The defendant is also required "to perform sixty (60) to one hundred (100) hours of public community restitution," attend "alcohol and/or drug treatment," and operate a motor vehicle with an ignition interlock system. Id.

refusal to take a chemical test because each statute requires that the officer have a reasonable belief that the operator of the motor vehicle was operating under the influence prior to requesting that the operator submit to a breath test. We disagree.

When the Supreme Court is confronted with a motion to dismiss based on double jeopardy or collateral estoppel, we invariably "engage[] in a de novo review, 'with respect to questions of law and mixed questions of law and fact involving constitutional issues * * *.'" State v. Rodriguez, 917 A.2d 409, 413 (R.I. 2007) (quoting State v. Snell, 892 A.2d 108, 115 (R.I. 2006)). "The doctrine of collateral estoppel provides that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" State v. Gautier, 871 A.2d 347, 358 (R.I. 2005) (quoting State v. Werner, 865 A.2d 1049, 1055 (R.I. 2005)). In order for collateral estoppel to apply there must be: "(1) an identity of issues, (2) the previous proceeding must have resulted in a final judgment on the merits, and (3) the party against whom collateral estoppel is asserted must be the same or in privity with a party in the previous proceeding." Id. (quoting Werner, 865 A.2d at 1055). Nonetheless, "we will 'not apply the doctrine mechanically in situations in which it would lead to inequitable results.'" Id. (quoting Foster-Glocester Regional School Committee v. Board of Review, 854 A.2d 1008, 1017 (R.I. 2004)).

This Court has had ample opportunity to address the application of the doctrine of collateral estoppel in a criminal prosecution in the context of probation-revocation hearings. An analysis of our case law in this analogous scenario is warranted. In State v. Chase, 588 A.2d 120 (R.I. 1991), we first considered whether a "finding of nonviolation at a probation-revocation

- 8 -

hearing preclude[d] the state from relitigating" the same issues at trial.[8] Id. at 121-22. Although we noted that "a probation-revocation hearing is not part of a criminal prosecution and therefore does not give rise to the full panoply of rights that are due a defendant at trial," we held that the state was collaterally estopped from litigating an issue that had been fully litigated during a probation-revocation hearing. Id. at 122, 123. Nonetheless, we limited our holding in Chase and declared that:

> "[O]nly a specific finding on a material matter of fact fully litigated at the probation-revocation hearing will collaterally estop the state from attempting to prove the same fact at trial. A general finding will not suffice, nor will a specific finding that was not fully litigated unless the state had notice that the issue was to be litigated fully at the hearing and had a fair opportunity to do so." Id. at 123 (emphasis added).

What became known as the "Chase doctrine" began its road to abrogation in the case of State v. Godette, 751 A.2d 742 (R.I. 2000) when the Court was called upon to examine the differences in the two proceedings. In Godette, the defendant was notified pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure that he was being presented as a probation violator, the basis of which was a charge of driving a vehicle without the consent of the owner. Godette, 751 A.2d at 744. At the probation-revocation hearing, the prosecutor indicated that he had amended the underlying offense to possession of a stolen vehicle. Id. The trial justice erroneously refused to consider the amended charge, finding that the state did not comply with Rule 32(f) in amending the notice. Godette, 751 A.2d at 744. The justice then concluded that there was insufficient evidence to declare the defendant a probation violator because the state did not prove that the defendant was driving the motor vehicle. Id. The same Superior Court justice

---

[8] We note that in this case, defendant moved to dismiss the charge, which renders his claim more akin to claim preclusion in the context of res judicata than issue preclusion under principles of collateral estoppel.

- 9 -

refused to dismiss the criminal charges against the defendant based on collateral estoppel, declaring that the charge of possession of a stolen motor vehicle was different from the offense set forth in the Rule 32(f) notice, driving without the consent of the owner, and therefore, collateral estoppel did not apply. Godette, 751 A.2d at 745. The defendant appealed from the denial of the motion to dismiss, and this Court declared that there was not an identity of issues because "three additional factors must be considered: 'first, the issue sought to be precluded must be identical to the issue decided in the prior proceeding; second, the issue must actually have been litigated; and third, the issue must necessarily have been decided.'" Id. at 746 (quoting State v. Hie, 688 A.2d 283, 285 (R.I. 1996)). We further recognized that the standard at a probation-violation hearing is "whether a defendant has failed to keep the peace and to remain on good behavior, which he or she must do in order to stay on probation." Id. at 745 (quoting Hie, 688 A.2d at 284). A few months later, we reaffirmed our holding in Godette in State v. Znosko, 755 A.2d 832 (R.I. 2000). Id. at 835 ("[A] showing that the defendant has failed to keep the peace and to remain on good behavior is sufficient to establish a probation violation." (citing Godette, 751 A.2d at 745)).

In Gautier, 871 A.2d at 357-60, the Chase doctrine was laid to rest. The Court carefully examined the differences between violation hearings and criminal trials, explaining that "a 'probation revocation hearing is not part of a criminal prosecution and therefore does not give rise to the full panoply of rights that are due [to] a defendant at trial.'" Id. at 358-59 (quoting Chase, 588 A.2d at 122). Critically, we found that probation-revocation hearings are less formal than a criminal trial—hearings are held without detailed preparation and evidence rules are less stringently applied—resulting in defendants being "afford[ed] considerably less due process protection than that to which they are constitutionally entitled in a full-blown criminal trial." Id.

- 10 -

at 359. We noted that the continued application of collateral estoppel in this context would "'undesirably alter the criminal trial process by permitting informal revocation determinations to displace the intended factfinding function of the trial'" and "forc[e] the state to expedite discovery and present any and all of its evidence and witnesses well in advance of trial." Id. at 360 (quoting Lucido v. Superior Court, 795 P.2d 1223, 1229 (Cal. 1990) (en banc)).

**Identity of Issues**

Although we acknowledge that the circumstances in the case at bar differ from the cases discussed, we are nonetheless persuaded by their rationales. In the case before us, we are confronted with two discrete offenses such that, as in Godette, there is not an identity of issues. An identity of issues requires "first, [that] the issue sought to be precluded must be identical to the issue decided in the prior proceeding; second, the issue must actually [have been] litigated; and third, the issue must necessarily have been decided." Godette, 751 A.2d at 746 (quoting Hie, 688 A.2d at 285). The requirements set forth in §§ 31-27-2.3 and 31-27-2.1 do not meet this three-part analysis.

To be sure, both statutes require that the officer have a reasonable belief or reasonable grounds to believe that the operator was operating a motor vehicle while under the influence of alcohol or other substances before requesting that the operator submit to a particular test. Importantly, the issue is unrelated to whether there was a lawful stop or probable cause to arrest the operator. Reasonable belief is merely the grounds upon which the officer based a request that the operator submit to each test. Reasonable belief that the operator was operating under the influence may be established up until the point when the officer requests that the operator submit to a preliminary breath test. Accordingly, the operator's post-arrest behavior, while irrelevant to an infraction under § 31-27-2.3, is highly relevant to a charge under § 31-27-2.1. These factors,

coupled with the observations made by the officer from his or her initial interaction with the operator—which constitute relevant and admissible evidence—may satisfy the reasonable grounds to believe the operator was driving while under the influence. A chemical refusal can be supported by evidence that is not relevant to an operator's refusal to submit to a preliminary test. See State v. Jenkins, 673 A.2d 1094, 1097 (R.I. 1996) (holding that a finding that the motorist was arrested without probable cause was unrelated and irrelevant to the issue of reasonable grounds to believe that the operator was driving under the influence in a prosecution for refusal, because the defendant was charged under two separate statutes with distinct elements); see also Gautier, 871 A.2d at 358, 360 ("Thus, even assuming, arguendo, that the hearing justice made additional findings of fact relieving the defendant of criminal responsibility [in the probation-revocation context] * * * it would in no way preclude the state from indicting and prosecuting [the] defendant for the alleged [crime]" "[b]ecause it is not appropriate for a hearing justice in probation-revocation proceedings to make factual determinations of guilt or innocence[.]"). As noted, the results of a preliminary breath test are not admissible in a trial for the more serious criminal offenses of driving under the influence and refusing to submit to a chemical breath test. We are hard-pressed to state that a determination on a preliminary refusal infraction could collaterally estop the state from pursuing the more serious chemical refusal charge when results from a preliminary breath test analysis would not even be admissible in such a subsequent proceeding.

We conduct a de novo review when confronted with a motion to dismiss on collateral estoppel grounds. See Rodriguez, 917 A.2d at 413. In the case at bar, we are confronted with a chaotic, 2 a.m. near-collision with a police cruiser, a motorist driving through two stop signs, followed by a foot chase, a pepper spray takedown, preliminary refusal, struggle, and

- 12 -

uncooperative behavior at the police department. Viewed in its entirety, this conduct provided Officer Sarasin with the requisite reasonable grounds to request a chemical breath test. We note that, at trial, Officer Sarasin testified that, before the stop, based on defendant's driving—which he described as erratic and involved two stop-sign violations at 2 a.m.—he suspected that defendant was driving under the influence. Furthermore, after the preliminary refusal,[9] Officer Sarasin found two unopened sixteen-ounce beer bottles in defendant's vehicle, and he testified that defendant was belligerent and uncooperative at the police department. The defendant ignored the officers' commands and repeatedly rose from his chair and attempted to walk away while being read his rights at the police department. He was physically restrained by officers each time and eventually handcuffed to the chair. Accordingly, we are of the opinion that identity of issues is lacking because there are two separate offenses and evidence which is relevant to the second offense was irrelevant to the first refusal.

**Actually Litigated**

Furthermore, we are not convinced that the issue to which defendant now seeks application of collateral estoppel was fully litigated in the Traffic Tribunal. The preliminary refusal was dismissed by the magistrate for lack of "evidentiary foundation." Although the application of collateral estoppel in the probation violation context has been abrogated, it nonetheless is useful to look to Chase, because we declared that "only a specific finding on a material matter of fact fully litigated at [a] * * * hearing will collaterally estop the state from attempting to prove the same fact at trial. A general finding will not suffice * * *." Chase, 588 A.2d at 123 (emphasis added). Here, the magistrate did not make a specific finding. He simply

---

[9] Although a preliminary refusal, standing alone, may not supply the requisite reasonable belief necessary to request that a motorist submit to a chemical breath test, the fact that the operator refused the preliminary breath test, however, is certainly an observation which may help an officer formulate a reasonable belief that the motorist is intoxicated, as required by § 31-27-2.1.

noted that the foundational requirements necessary to prove a preliminary refusal had not been met, and he did not make "a specific finding on a material matter." Id. Before the magistrate, the officer failed to offer any testimony about his reasonable belief that defendant was driving while intoxicated. In rendering his decision, the magistrate informed Officer Sarasin that the "evidentiary foundation" that he was required to put forth is one based on contact with the motorist—"that you smelled alcohol or saw bloodshot, watery eyes or a staggered gait or motor skills * * *[.]" Critically, however, none of these observations is statutorily mandated, nor are they elements of the offense, such that collateral estoppel should operate. The magistrate also declared that Officer Sarasin should have testified that:

> "[he was] certified * * * through the academy * * * in DUI investigation and that based upon all of these observations, it was leading * * * [him] down the path to conclude that [defendant] was operating under the influence of alcohol and/or drugs and that in furtherance of this investigation, [he] asked [defendant] to submit to the preliminary breath test, that [he was] certified to do the * * * preliminary breath test and that [defendant] refused to do that."

The magistrate further misconstrued the statute in determining that Officer Sarasin was required to testify as to his certifications. Although this testimony is often offered in similar cases, it is in no way required by § 31-27-2.3 to sustain a preliminary refusal infraction. The magistrate did not make "a specific finding on a material matter of fact." Chase, 588 A.2d at 123.

In Rhode Island, every person who operates a motor vehicle in this state is deemed to have given consent to chemical tests for the presence of alcohol or drugs in his or her system. All that is necessary is that the officer reasonably believe that a motorist who has been lawfully stopped is driving under the influence of alcohol or drugs. Certainly, the smell of alcohol, bloodshot eyes, or a staggering gait are among the hallmarks of drunk driving. However, these observations are not exclusive factors upon which an officer "has reason to believe that a person

- 14 -

is driving * * * or has actual physical control of any motor vehicle in this state while under the influence of alcohol." State v. DiStefano, 764 A.2d 1156, 1160 (R.I. 2000). The doctrine of collateral estoppel "is capable of producing extraordinarily harsh and unfair results." Foster-Glocester Regional School Committee, 854 A.2d at 1017 (quoting Casco Indemnity Co. v. O'Connor, 755 A.2d 779, 782 (R.I. 2000)), such that this Court will "not apply the doctrine 'mechanically' in situations in which it would lead to inequitable results." Gautier, 871 A.2d at 358 (quoting Foster-Glocester Regional School Committee, 854 A.2d at 1017). As we did in Godette, we continue to heed the "United States Supreme Court's observation that 'collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.'" Godette, 751 A.2d at 746 (quoting Hie, 688 A.2d at 285; Ashe v. Swenson, 397 U.S. 436, 444 (1970)). We therefore decline to apply a doctrine that hinges on the fact that an issue was "actually litigated" when the evidentiary threshold was not established and the magistrate made only a general finding on the issue.

**Differences Between the Traffic Tribunal and the Superior Court**

Finally, the state argues that collateral estoppel should not apply in Superior Court to decisions rendered in the Traffic Tribunal. In ruling on this issue, Gautier instructs us to carefully examine the procedural and substantive differences between proceedings in the Traffic Tribunal and criminal trials conducted in the Superior Court. See Restatement (Second) Judgments § 28 cmt.d. (1982) ("[T]here may be compelling reasons why [issue] preclusion should not apply. For example, the procedures available in the first court may have been tailored to the prompt, inexpensive determination of small claims and thus may be wholly inappropriate to the determination of the same issues when presented in the context of a much larger claim.").

- 15 -

Rule 2 and Rule 17 of the Rules of Procedure for the Traffic Tribunal delineate that the rules adjudicate "civil, not criminal, violations" where the state or municipality has the burden to "prosecut[e] to a standard of clear and convincing evidence." The discovery mechanisms are also more limited than those in the Superior Court, and defendants are not guaranteed the right to counsel.

We also note that several jurisdictions have considered this issue and rejected holding that traffic infractions may serve as a basis for collateral estoppel in a subsequent criminal proceeding.[10] The Court of Appeals of Arizona, in State v. Walker, 768 P.2d 668 (Ariz. Ct. App. 1989), noted that "[c]ollateral estoppel effect is generally denied to traffic convictions and minor offenses under accepted common law principles * * * because of the relative insignificance of the charges, [the] defendants have no constitutional right to a jury trial in traffic cases, as they would in true criminal prosecution, and cannot reasonably be expected to defend with the same vigor." Id. at 671 (citing Gilberg v. Barbieri, 441 N.Y.S.2d 49, 51-53, 52 (N.Y. 1981)). See also In re Dennis B., 557 P.2d 514, 520 (Cal. 1976) (noting that "highway patrol officers * * * perform certain tasks for which deputy district or city attorneys are usually required[;] [t]his type of flexibility benefits all parties: defendants gain a swift and inexpensive disposition of their cases without risk of major penalties; and the prosecution, the court system, and ultimately the public benefit because judicial and law enforcement resources are freed to concentrate on serious criminal behavior"). Cf. Briggeman v. Albert, 586 A.2d 15, 18 (Md. 1991) (considering whether to admit a traffic violation in subsequent criminal proceeding, noting that "it is common

---

[10] To be sure, we are cognizant that traffic tribunal rules and violations vary from jurisdiction to jurisdiction. We nonetheless are of the opinion that the rationales from these cases are instructive as to this particular question.

experience that people plead guilty to traffic charges for reasons of expediency even though they may believe themselves innocent").

This Court has held that the application of collateral estoppel in the criminal context is to be applied with practicality and reasonableness.  See Godette, 751 A.2d at 746; Hie, 688 A.2d at 284-85.  We are mindful that a criminal trial is a search for the truth.   See State v. Oster, 922 A.2d 151, 163 (R.I. 2007) ("A criminal trial is a search for the truth; it is not a game of chess.").  Nonetheless, in light of our conclusion that collateral estoppel does not apply in the circumstances of this case, we deem it unnecessary to decide whether collateral estoppel is applicable to issues determined in the Traffic Tribunal when all of the elements of the doctrine are met.  That is a journey we reserve for another day.

## Conclusion

For the reasons articulated herein, we affirm the judgment of conviction of the Superior Court.  The papers may be remanded to the Superior Court.

**Justice Flaherty, with whom Justice Robinson joins, dissenting.**  We respectfully dissent from the holding of the majority in this case.  We do not quibble with the majority's explanation of the law on collateral estoppel, nor do we disagree with its interpretation of G.L. 1956 § 31-27-2.3(a) (the preliminary breath test statute) or § 31-27-2.1 (the chemical test statute).  Moreover, it is our opinion that the majority's recitation of the facts is, for the most part, accurate.  We dissent, however, because we believe that the majority has misapplied the pertinent facts to the law.

As the majority correctly explains, the doctrine of collateral estoppel has three fundamental elements: "(1) the parties are the same or in privity with the parties of the previous

- 17 -

proceeding; (2) a final judgment on the merits has been entered in the previous proceeding; [and] (3) the issue or issues in question are identical in both proceedings." Kenlin Properties, LLC v. City of East Providence, 139 A.3d 491, 497-98 (R.I. 2016) (quoting Foster-Glocester Regional School Committee v. Board of Review, 854 A.2d 1008, 1014 (R.I. 2004)). After carefully reviewing the record in this case, it is our opinion that defendant has met every element of the collateral estoppel test; and, therefore, the state should have been precluded from offering testimony that would establish reasonable suspicion of defendant's intoxication prior to his refusal to submit to the preliminary breath test. Consequently, his conviction for failure to submit to a chemical test should be vacated.

# I

## Same Parties

The majority correctly notes that the state has conceded that the parties were identical at the hearings in the Traffic Tribunal and the Superior Court. Therefore, this element of the collateral estoppel doctrine has been satisfied.

# II

## Final Judgment

Likewise, the final judgment element was easily met when the Traffic Tribunal issued a Traffic Summons Judgment Card for the preliminary breath test refusal count. A fuller discussion of final judgment follows in Section III(C).

# III

## Identity of Issues

The final element of collateral estoppel is identity of issues. For defendant to show that there was an identity of issues, three sub-elements must be met: the issue that is to be precluded

must be identical to the issue that was decided in the prior proceeding; the issue must actually have been litigated; and, the issue must have been decided. See State v. Godette, 751 A.2d 742, 746 (R.I. 2000).

## A

### Identical Issue

The majority correctly notes that the preliminary breath test statute and the chemical test statute each requires a law enforcement officer to have "reasonable belief or reasonable grounds" to request that a motorist submit to either a preliminary breath test or a chemical test. That is, both statutes require an officer to meet the same level of suspicion before requesting the administration of a test for intoxication. The majority states that, under the preliminary breath test statute, "[r]easonable belief that the operator was operating under the influence may be established up until the point when the officer requests that the operator submit to a preliminary breath test." We agree completely with this statement. The majority then adds that "the operator's post-arrest behavior, while irrelevant to an infraction under [the preliminary breath test statute], is highly relevant to a charge under [the chemical test statute]." It is this statement, particularly as applied to the facts in this case, that lies at the core of our dissent.

It is important to note that we do not advance the argument that the state is always estopped from pursuing a charge under the chemical test statute after a defendant has been found to be not liable under the preliminary breath test statute. Indeed, we recognize that there are significant differences between the two statutes that would frequently render a defense of collateral estoppel inapplicable. However, our focus is on the identical threshold issue contained in each statute: that a police officer must have reasonable belief that the motor vehicle operator was impaired before administering a test for intoxication. It is with respect to this threshold

- 19 -

issue that the state failed to produce evidence in the Traffic Tribunal, resulting in a dismissal of the charge of refusing to take a preliminary breath test.

Upon an initial reading, the two statutes appear distinct enough such that collateral estoppel could not apply because evidence from a later moment in time is permissible to create reasonable suspicion under the chemical test statute. However, it is our position that, if a defendant is found not liable on the preliminary breath test statute because the state failed to show that an officer had a reasonable suspicion to believe that defendant was operating his vehicle under the influence, and later, at a subsequent trial, the state produces no post-arrest evidence that would demonstrate that a police officer had reasonable cause to believe that defendant had been operating a motor vehicle while intoxicated, then the issue to be decided is identical.

Here, the magistrate at the Traffic Tribunal ruled that the state had failed to establish that the law enforcement officer had produced evidence that he had reasonable suspicion to believe that defendant was driving under the influence.[1] This, of course, was necessary as well when defendant was prosecuted in the Superior Court for refusal to submit to the chemical test. Notwithstanding that shortcoming, had the state produced any credible post-arrest evidence that defendant had been operating a motor vehicle while intoxicated, we would agree with the majority that collateral estoppel does not apply. However, after a thorough review of the record we are unable to divine any post-arrest evidence that would have given rise to a reasonable

---

[1] As the majority writes, with respect to the proceedings before the Traffic Tribunal: "[T]he officer failed to offer any testimony about his reasonable belief that defendant was driving while intoxicated." It was this lack of testimony that required the magistrate to dismiss the preliminary breath charge because, according to the magistrate, "[w]ithout the foundation evidence of that, that charge can't be sustained."

suspicion to believe that defendant was operating his motor vehicle while intoxicated. The majority notes that, after Officers Sarasin and Perreault arrested defendant,

> "Officer Sarasin found two unopened sixteen-ounce beer bottles in defendant's vehicle, and he testified that defendant was belligerent and uncooperative at the Police Department. The defendant ignored the officers' commands and repeatedly rose from his chair and attempted to walk-away while being read his rights at the Police Department. He was physically restrained by officers each time and eventually handcuffed to the chair."

Nothing in Officer Sarasin's testimony in the Superior Court demonstrates any indicia of intoxication such that an officer would have reasonable suspicion to believe that defendant was operating his vehicle while he was intoxicated. The officer's discovery of sealed beer bottles cannot be an indication of intoxication; indeed, it is hard to imagine a person becoming intoxicated from an unopened bottle of beer. To find otherwise would create a situation where any person driving with a sealed bottle that contains an alcoholic beverage has, by that fact alone, given an officer reasonable suspicion to believe that he is intoxicated. Likewise, the fact that defendant was belligerent at the police station and did not remain seated while being processed does not give rise to a suspicion of intoxication, and no witness testified that it did. This is especially so when we take into consideration that Officer Sarasin testified that defendant was still suffering from the effects of the pepper spray with which the officers had earlier doused him.[2]

Because there was no post-arrest evidence that would give rise to the reasonable belief that defendant was intoxicated, the reasonableness of suspicion must rest on Officer Sarasin's testimony about pre-arrest evidence. But, in our opinion, the failure of the state to have offered

---

[2] In a footnote, the majority suggests that the mere refusal of the preliminary test "may help an officer formulate a reasonable belief that the motorist is intoxicated[.]" We vigorously disagree with this notion because there are myriad reasons why a person may decide to refuse the preliminary breath test.

any such evidence at the Traffic Tribunal should, by the operation of collateral estoppel, have been precluded in the Superior Court.

It is our opinion that, in this case, there was an identity of issues in the case before the Traffic Tribunal and the later proceeding in the Superior Court. At trial in the Superior Court, the state failed to show any indicia of intoxication on the part of defendant, except for the evidence that should have been produced at the Traffic Tribunal. Accordingly, collateral estoppel should have precluded the admission of such evidence in the Superior Court.

### B

### Actually Litigated

Our law is clear that for collateral estoppel to apply, an issue must be "actually litigated." Kenlin Properties, LLC, 139 A.3d at 497; see also Foster-Glocester Regional School Committee, 854 A.2d at 1014. According to Black's Law Dictionary, for an issue to be "actually litigated," it must have been "properly raised in an earlier lawsuit, submitted to the court for a determination, and determined." Black's Law Dictionary 43 (10th ed. 2014). To us, it is obvious that the issue that defendant sought to exclude from trial in the Superior Court—namely, pre-arrest evidence that would give rise to a reasonable suspicion that he was intoxicated while operating his motor vehicle—was litigated in the Traffic Tribunal.

During the proceeding in the Traffic Tribunal, the issue was raised when the magistrate began the proceeding by saying: "All right, this is * * * summons 07-103-008802 * * *, refusing to submit to a preliminary breath test, * * * this occurred * * * 12/28/2011, is that correct?"

- 22 -

Officer Sarasin[3] responded, "[y]es, sir." The issue was analyzed by the magistrate upon the close of evidence, and it was then determined when the magistrate dismissed the charge.

The majority appears to believe that collateral estoppel should not apply because the state failed to introduce any evidence in the Traffic Tribunal that would create an "evidentiary foundation" to indicate that Officer Sarasin had a reasonable suspicion to believe that defendant was intoxicated. However, we are perplexed by the majority's reasoning because it relies on abrogated law to support its argument. The majority opinion details how this Court abrogated State v. Chase, 588 A.2d 120, 123 (R.I. 1991), and highlights the following language from Chase as no longer good law:

> "[O]nly a specific finding on a material matter of fact fully litigated at the probation-revocation hearing will collaterally estop the state from attempting to prove the same fact at trial. A general finding will not suffice, nor will a specific finding that was not fully litigated unless the state had notice that the issue was to be litigated fully at the hearing and had a fair opportunity to do so." Id.[4]

After disavowing this very language, the majority goes on to quote the exact same language to support its proposition that the issue that defendant seeks to collaterally estop was not actually litigated in the Traffic Tribunal. In doing so, the majority removes the words "the probation-revocation" from the quote and replaces those words with a bracketed "a," as though that legerdemain would somehow bring Chase back from the dead.

The majority opines that collateral estoppel cannot apply "when the evidentiary threshold was not established" because the magistrate did not make a "specific finding," but rather made only a "general finding." To support this conclusion, the majority relies on the overruled section

---

[3] As the majority correctly notes, the Traffic Tribunal transcript incorrectly identifies the officer as Officer Harris. It was, in fact, Officer Sarasin who testified at the Traffic Tribunal.
[4] This language from State v. Chase, 588 A.2d 120, 123 (R.I. 1991), was specifically overruled by State v. Gautier, 871 A.2d 347, 358-60 (R.I. 2005).

of Chase that requires a "specific finding" of fact.  Accordingly, we believe that the majority relies on abrogated law in coming to its conclusion that the issue was not actually litigated.

Actually, our law allows the doctrine of collateral estoppel to apply "<u>when an issue of ultimate fact has once been determined</u> by a valid and final judgment[.]"  State v. Gautier, 871 A.2d 347, 358 (R.I. 2005) (quoting State v. Werner, 865 A.2d 1049, 1055 (R.I. 2005) (emphasis omitted and added)).  Although the magistrate may not have made a "specific finding," he did determine an issue of ultimate fact when he ruled that the state had failed to create an "evidentiary foundation."[5]

The majority's reliance on the magistrate's failure to make a specific finding of fact is additionally misguided because the state provided no evidence upon which the magistrate could have made a specific finding.  It was the state's burden to show by clear and convincing evidence that the officer had reasonable suspicion.  For collateral estoppel to apply at a later proceeding, all that matters is that the state had the opportunity to introduce evidence, not whether it actually did.  See Restatement (Second) Judgments § 27 cmt. c. at 253 (1982) ("[I]f the party against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered an adverse determination, new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact.");[6] see also Adler v. Makowski, 486 N.W.2d 37, at *3 (Wis.

---

[5] Black's Law Dictionary defines "ultimate fact" as "1. A fact essential to the claim or the defense. * * * 2. A fact that is found by making an inference or deduction from findings of other facts; specif., a factual conclusion derived from intermediate facts."  Black's Law Dictionary 711 (10th ed. 2014).  Here, the magistrate inferred from the lack of evidence produced that the officer did not have reasonable suspicion.

[6] Illustration 4 to Restatement (Second) Judgments § 27 at 253 (1982) provides the following helpful hypothetical:

> "A brings an action against B to recover for personal injuries in an automobile accident. A seeks to establish that B was negligent in driving at an excessive rate of speed. After trial, verdict and judgment are given for B. In a subsequent action by B

Ct. App. 1992) ("The party seeking to avoid application of the doctrine [of collateral estoppel] bears the burden of showing that he was deprived of a full airing of the issue the first time.").

Clearly, the state had the opportunity to produce in the Traffic Tribunal the evidence that it later relied on in the Superior Court; namely, Officer Sarasin's testimony. Thus, it should have been estopped from producing that same evidence in the Superior Court.

## C

### The Issue Was Decided

It is further our opinion that the issue was decided when the Traffic Tribunal magistrate dismissed the charge against defendant for refusing the preliminary breath test. The matter was decided by a judicial officer who had the authority to resolve the issue fully and finally, and he did so. After the hearing, a Traffic Summons Judgment Card entered that noted the disposition of the charge as "Dismissed." The magistrate's dismissal of that charge from the bench and the subsequent entering of the judgment are conclusive of the fact that the issue was decided.

The majority attempts to discredit the validity of the Traffic Tribunal judgment by likening the proceedings to probation-revocation hearings. Although what transpires in the Traffic Tribunal is in some respects less formal than what usually occurs in the Superior Court, it is, nonetheless, a legislatively created court of competent jurisdiction. See G.L. 1956 §§ 8-8.2-1, 8-8.2-2. The hearings are recorded and presided over by a full-time magistrate, and the decisions are binding upon the parties.

---

against A for injuries in the same accident, A is precluded from setting up B's negligence as a defense, whether or not the alleged negligence is based on an assertion of excessive speed. It is reasonable to require A to bring forward all evidence in support of the alleged negligence in the initial proceeding."

Moreover, the General Assembly saw fit to give the Traffic Tribunal jurisdiction over charges brought under both the preliminary breath test statute and the chemical test statute.[7] See G.L. 1956 § 42-9-4(b). Thus, the Traffic Tribunal is as equally competent as the Superior Court to adjudicate charges under the chemical test statute. It is difficult to imagine the majority not applying collateral estoppel had the second proceeding occurred in the Traffic Tribunal. The fact that the chemical test charge was brought in the Superior Court should not change the result.

Because we conclude that: (1) the issue that was decided in the Superior Court was identical to the one before a judicial officer in the Traffic Tribunal; (2) that the issue was actually litigated in the Traffic Tribunal; and (3) that the issue was decided, we believe that there was an identity of issues for the purpose of applying collateral estoppel.

## IV

### Conclusion

In our opinion, the elements of collateral estoppel were met. The question is not whether the state fully litigated its case in the Traffic Tribunal, but whether it had the opportunity to do so. It did, and it was not successful. As a result, the state should have been precluded from offering evidence in the Superior Court about what occurred before the defendant's arrest. Without that testimony, the charge of refusal to take the chemical test pursuant to § 31-27-2.1 fails and the conviction should be vacated. Consequently, we respectfully dissent from the majority opinion in this case.

---

[7] The Superior Court had jurisdiction over the offense under G.L. 1956 § 31-27-2.1, refusal to submit to a chemical test, because it was defendant's second offense, which has been declared to be a misdemeanor by the General Assembly. Had it been a first offense, the matter would have been adjudicated in the Traffic Tribunal.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Francisco Pacheco. |
| **Case Number** | No. 2014-229-C.A.<br>(P2/12-1403A) |
| **Date Opinion Filed** | June 16, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For State:<br><br>Aaron L. Weisman<br>Department of Attorney General |
| | For Defendant:<br><br>Megan F. Jackson<br>Office of the Public Defender |

SU-CMS-02A (revised June 2016)